# Exhibit A

# (Proposed Order)

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 7 |
| Phoeno Wine Company, Inc., *et al.*, | Case No. 23-10554 (KBO) |
| Debtors. | Jointly Administered |
| | **Re: Dkt. No. ___** |

**ORDER AUTHORIZING ORION WAREHOUSING SERVICES, LLC TO RECLAIM**
**POSSESSION OF NON-ESTATE PERSONAL PROPERTY**

This matter coming before the Court upon the *Stipulation Regarding Proposed Order Authorizing Orion Warehousing Services, LLC To Reclaim Possession Of Non-Estate Personal Property* (the "**Stipulation**"), and the Court having reviewed the Stipulation,

IT IS HEREBY ORDERED THAT:

1.      The Stipulation attached hereto as **Exhibit 1** is approved.

2.      The automatic stay is modified in favor of Orion Warehousing Services, LLC as set forth in the Stipulation.

3.      The Parties to the Stipulation are authorized to take all action necessary or appropriate to implement the Stipulation.

4.      This Court shall retain jurisdiction to resolve any and all disputes arising from or related to the Stipulation and/or this Order.

5.      The Stipulation shall become effective immediately upon entry of this Order.

# Exhibit 1

## (Stipulation)

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| Phoeno Wine Company, Inc., *et al.*, | Case No. 23-10554 (KBO) |
| Debtors. | Jointly Administered |

### STIPULATION REGARDING PROPOSED ORDER AUTHORIZING ORION WAREHOUSING SERVICES, LLC TO RECLAIM POSSESSION OF NON-ESTATE PERSONAL PROPERTY

Don A. Beskrone, Chapter 7 Trustee (the "**Trustee**") of the above-captioned debtors and their respective estates (the "**Estates**"), and Orion Warehousing Services, LLC (the "**OWS**" and, together with the Trustee, as applicable, the "**Parties**"), hereby stipulate and agree (this "**Stipulation**") as follows:

### RECITALS

**WHEREAS**, Phoeno Wine Company, Inc. ("**Phoeno**"), as the "Warehouse", and OWS, as the "Depositor", entered into that certain *Storage Agreement for Merchandise Warehouse* on or about June 27, 2022 (the "**Agreement**"), a copy of which is attached hereto as Exhibit A.

**WHEREAS**, OWS placed into storage certain Goods (as defined in the Agreement) to be held by the Warehouse pursuant to the terms of the Agreement.

**WHEREAS,** on May 1, 2023 (the "**Petition Date**"), the Debtors filed voluntary petitions under Chapter 7 of the Bankruptcy Code commencing these chapter 7 cases (the "**Cases**").

**WHEREAS,** following the filing of the bankruptcy petitions, the United States Trustee for the District of Delaware appointed Don A. Beskrone to serve as Chapter 7 Trustee in the Cases and a meeting of creditors under and pursuant to 11 U.S.C. § 341(a) was held and concluded on June 13, 2023.

**WHEREAS**, OWS continues to have the following Goods stored with Phoeno under the terms of the Agreement:

**Yannis Nezos Wine & Provisions**

| Product | Remaining Inventory |
|---|---|
| 2015 Antonym 12/750ml | 348 |
| 2016 Antonym 12/750ml | 855 |
| 2017 Antonym 12/750ml | 693 |
| 2018 Antonym 12/750ml | 829 |
| 2019 Antonym 12/750ml | 836 |
| 2018 Genogram 12/750ml | 316 |
| 2019 Genogram 12/750ml | 1100 |
| | 4977 |

**WHEREAS**, OWS currently owes Phoeno certain amounts for monthly storage and other charges relating to Phoeno's storage of the Goods.

**WHEREAS**, the Parties have agreed to entry of an order (the "**Proposed Order**") approving the terms and conditions of this Stipulation, and granting OWS relief from the automatic stay for the purpose of authorizing OWS to immediately reclaim possession of OWS's stored Goods in exchange for payment from OWS of all amounts due to Phoeno under the Agreement.

**NOW, THEREFORE**, subject to the approval of the Bankruptcy Court, in order to avoid the costs, risks and delays of litigation, the Parties hereby stipulate and agree as follows:

1.      The Goods do not constitute property of the Estates.

2.      The Trustee and OWS shall work in good faith to agree upon a mutually acceptable date(s) and time(s) for representatives of the Trustee and OWS to access the Warehouse for the purpose of (i) identifying and clearly marking the Goods and (ii) OWS taking possession of all Goods.  In connection therewith, the Goods shall be removed from the Warehouse using OWS's personnel and equipment and any costs associated with removal shall be borne by OWS.

3.      Prior to the removal of the Goods, OWS shall pay to the Trustee via wire transfer, pursuant to wire instructions provided by the Trustee, for the benefit of the Estates storage for the months of April, May, June and July 2023 in the aggregate amount of **$3,952.90**.

4.      Notwithstanding the foregoing, OWS shall indemnify and hold the Estates harmless from any and all reasonable and documented costs and expenses and all documented damages incurred by the Estates directly related to the removal by OWS of the Goods.

Dated: July 7, 2023

**ASHBY & GEDDES, P.A.**

*/s/ Gregory A. Taylor*
Gregory A. Taylor (No. 4008)
500 Delaware Avenue
P.O. Box 1150
Wilmington, DE  19899
Phone: (302) 654-1888
Facsimile: (302) 654-2067

*Counsel for Don A. Beskrone, Chapter 7 Trustee*

**ORION WAREHOUSING SERVICES, LLC**

*/s/ Debbie Payton*
Debbie Payton
Partner /General Manager
677 Hanna Drive Suite A
American Canyon, CA 94503
Phone:  (707) 337-9247

# **Exhibit A**

## **(Agreement)**

# PHOENO WINE COMPANY, INC.
## 1166 Commerce Blvd., American Canyon, CA  94503

# STORAGE AGREEMENT
# FOR MERCHANDISE WAREHOUSE

Storage Agreement ("Contract") between **Phoeno Wine Company, Inc.** ("Warehouse"), which operates a storage facility ("Facility") at 1166 Commerce Blvd., American Canyon, CA  94503 and **Orion Warehousing Services** ("Depositor") at 677 Hanna Drive Suite A, American Canyon, CA 94503 on June 27, 2022.

## Section 1 -   ACCEPTANCE

(a)     Depositor intends to tender certain goods (the "Goods") to the Facility operated by Warehouse located at the above-stated California address, for release to Depositor or its order. Warehouse shall render services relating to such Goods ("Services") in accordance with this Contract and with specifically dated and numbered receipts ("Warehouse Receipt(s)") issued hereunder in written or electronic form.  Inbound Services at the Facility may be referred to by the term "Tender" and outbound Services at the Facility may be referred to by the term "Release" (including grammatical forms of such terms).  Each Warehouse Receipt shall be considered an integral part of this Contract when fully executed by both Depositor and Warehouse (the "Parties").  This Contract, and any rate quotations (including accessorial charges) attached hereto as Schedule 1, must be accepted by Depositor within thirty (30) days from June 27, 2022 (the "Proposal Date") by signature of Depositor's authorized representative on this Contract.  In the absence of such written acceptance, Depositor's act of tendering Goods described herein for storage by Warehouse at the Facility within thirty (30) days from the Proposal Date shall constitute such acceptance by Depositor.  The presentation of a counterproposal by Depositor shall not change the terms of this Contract unless specifically agreed to in writing by Warehouse.

(b)     Goods tendered for storage at the Facility under subsection 1(a) above shall conform to one or more of the descriptions contained in Schedule 2 attached hereto, as amended from time to time by prior written or electronic consent of both Parties.  If conforming Goods are tendered for storage outside the time limits provided in paragraph (a) of this section for acceptance of this Contract or tender of Goods, or if non-conforming Goods are tendered at any time, Warehouse may refuse to accept such Goods for storage.  If Warehouse accepts such Goods for storage, Depositor agrees to the rates and charges as reflected in Schedule 1 and invoiced by Warehouse, and to all terms of this Contract.

(c)     An example of an acceptable Warehouse Receipt form, followed by copies of all Warehouse Receipts fully executed by the Parties, shall be attached to this Contract as Schedule 3.  No such Warehouse Receipt shall be negotiable except by prior written or electronic consent of both Parties in specific instances.

(d)     This Contract is deemed canceled if no storage or other Services are performed by Warehouse for Depositor at the Facility during any period of thirty (30) consecutive days.

(e)      Details about Services under this Contract shall be specified in <u>Schedule 4</u> of this Contract, as amended from time to time by prior written or electronic consent of both Parties.

(f)  Any Goods tendered by Depositor to Warehouse for storage at the Facility prior to the date of this Contract are subject to the terms and conditions of this Contract.

## Section 2 -   SHIPPING

The Parties agree and recognize that this Contract shall not govern transportation of Goods to or from the Facility, and that Depositor shall make all arrangements for such transportation unless both Parties otherwise agree in writing or electronically under section 5(a) or (b) as to particular Goods.  Warehouse does not act as a motor carrier, other for-hire carrier or freight broker under this Contract, nor shall Warehouse be shown as carrier, broker or consignee on any bill of lading or other shipping document; *provided however,* that Warehouse shall prepare bills of lading under section 4(a), 5(a) or 5(b) of this Contract as an agent for a carrier if so instructed by Depositor.  If in violation of this Contract, Depositor causes Goods to be shipped to or from Warehouse under documents showing Warehouse as the named carrier, broker or consignee, Depositor agrees to notify the actual carrier in writing or electronically as soon as possible after such shipment, with copy of such notice to Warehouse, that despite being named as carrier, broker or consignee, Warehouse is only a warehouse and has no beneficial title or interest in such Goods.  In such event Depositor further agrees to indemnify and hold harmless Warehouse from any and all claims for unpaid transportation charges, including undercharges, demurrage, detention, loss of discount, broker commissions, or transportation charges of any nature, in connection with Goods so shipped.  Depositor further agrees that, if it fails to notify carrier as required by the preceding two sentences, Warehouse shall have the right to refuse delivery of such Goods, in which event Warehouse shall not be responsible for any loss, injury or damage of any nature to or related to such Goods.  Depositor agrees that all promises contained in this section will be binding on Depositor's successors and assigns.

## Section 3 -   TENDER FOR STORAGE

Storage shall be defined as the physical resting of Goods at the Facility upon being tendered by Depositor.  All Goods tendered for storage at the Facility shall be properly marked and securely packed for handling.   At or before such tender, Depositor shall furnish a manifest showing marks, brands or sizes to be kept and accounted for separately and showing the class of storage desired.  Unless otherwise instructed, Goods will be stored in bulk, in lots or in a commingled manner, at the reasonable discretion of Warehouse.  Should Goods in storage be transferred on the books of Warehouse from one person to another at Depositor's request, a new storage date will be established on the date of transfer.  On request of Depositor, and then only by special arrangements and subject to a reasonable extra labor charge, original packages may be broken for partial delivery.  Storage charges become applicable upon the date that Warehouse accepts care, custody and control of the Goods, regardless of unloading date or date of issuance of a Warehouse Receipt.

## Section 4 -   STORAGE PERIOD AND CHARGES

(a)      All Goods are stored for an initial term of six (6) months, subject to extension if Depositor gives Warehouse three (3) months' prior written or electronic notice, and if Warehouse agrees in writing or electronically to such extension. All charges for storage are stated in U.S. Dollars and shall be in accordance with the quoted rates below or as may be further specified in Schedule 1. Either Party may terminate this Contract upon thirty (30) days' written notice to the other Party in the event of a Material Breach of this Contract which the Party in breach fails to cure within ten (10) days of the termination notice. A Material Breach by Depositor shall include, without limitation, its non-payment of undisputed invoices outstanding more than thirty (30) days, or its tender of Goods which cause damage, destruction or contamination of other Goods. In the event of any conflict between this Contract (including the quoted rates below and Schedule 1) and a particular Warehouse Receipt with regard to rates, charges or other terms, the provisions of the Warehouse Receipt shall prevail.

Quoted Rates of Warehouse:

**Storage Charges**: $1.10 per square foot per month.

**Handling Charges**: $7.00 per incoming pallet and $7.00 per outgoing pallet, billed respectively upon Tender and Release of Goods.

**BOL Charge**: $3.00 for every bill of lading prepared by Warehouse (as agent for Depositor's designated carrier(s) subject to section 2 of this Contract), to be billed to Depositor only upon Release of Goods to the Warehouse.

**Accessorial Charges**: $35.00 per hour for unanticipated labor such as repairing broken pallets, wrapping poorly stored Goods, etc.

(b)      If Goods are tendered on the first through the fifteenth, inclusive, of a calendar month, one month's storage shall be charged under subsection 4(a) for the month in which storage begins. On all Goods for which storage begins between the sixteenth and the last day of a calendar month, Depositor shall pay one-half month's storage under subsection 4(a)for the month in which storage begins. For all Goods on hand at the end of the month, Depositor will pay a full month's storage for the following month. All storage charges are incurred on the first day of storage in the initial month, and thereafter, on the first day of each succeeding calendar month.

(c)      An invoice is due and payable to Warehouse within ten (10) days after Depositor's receipt of such invoice from Warehouse. Unresolved claims or other countercharges may not be deducted or otherwise offset by Depositor against such invoices. Any dispute between the Parties over a claim or countercharge shall be resolved in accordance with section 11 of this Contract. All handling and storage payments not received by Warehouse within the period of ten (10) days referenced above will be subject to a service charge of 1% per month until paid.

## Section 5 -   TRANSFER, TERMINATION OF STORAGE, RELEASE OF GOODS

(a)      Instructions by Depositor to transfer specified Goods on the books of Warehouse are not effective until delivered to and accepted by Warehouse, and until all charges owed on those Goods under section 4 up to the time transfer is made are paid by the Depositor of record. If a

DocuSign Envelope ID: F3556A65-8016-4DA6-A620-0598FB4299B0

transfer involves physical movement of Goods within the Warehouse, such movement will be subject to a reasonable accessorial charge under section 4(a) of this Contract. When Goods in storage are transferred from the account of one person to another at the request of Depositor, a new storage date is established on the date of transfer and a new Warehouse Receipt will be issued.

(b)      Warehouse, at its expense, fourteen (14) days after notice is sent by certified or registered mail to the Depositor of record, may move any Goods in storage from the Facility in which they are stored to any other storage facility utilized by Warehouse if such facility (i) offers services referenced in Schedule 4 as applicable to the transferred Goods and (ii) is located within reasonable proximity to the Facility, and if a new Warehouse Receipt will be issued. The carrier(s) to be used for such movement shall be chosen by mutual agreement of the Parties, unless the notice referenced in the previous sentence cannot be delivered to the Depositor.

(c)      If this Contract is terminated for a Material Breach within the meaning of section 4(a) hereof, Warehouse may, upon written notice to the Depositor of record, and/or to any other person known by Warehouse to claim an interest in the Goods, require the removal of the Goods by the end of the next succeeding storage month. If Goods are not removed within thirty (30) days after the end of the next succeeding storage month, Warehouse may sell them in accordance with applicable law.

(d)      If a termination under section 4(a) hereof results from a quality or condition of the Goods of which Warehouse had no notice at the time of deposit, and which makes such Goods a hazard to other property in the Facility or to persons, then after thirty (30) days' prior written notice to Depositor to remove such Goods, Warehouse may sell the Goods at public or private sale without advertisement upon reasonable notification to all persons known to claim an interest in the Goods. If Warehouse, after a reasonable effort, is unable to sell the Goods, it may dispose of them in any lawful manner and shall incur no liability by reason of such disposition. Pending such disposition, sale or return of the Goods, Warehouse may remove such Goods from the Facility and shall incur no liability by reason of such removal.

(e)      When Goods are ordered out of the Facility by Depositor, Warehouse shall be afforded a reasonable time (not to exceed 30 days) to execute a shipping instruction to a carrier designated by Depositor (unless the Parties have agreed in writing that a designation is to be made by Warehouse). Should shipment not occur because Warehouse is prevented, due to acts of God, war, terrorism, public enemies, seizure under legal process, strikes, lockouts, riots, civil commotions, quarantine or pandemic, or because of any other prohibition provided by law, from executing a shipping instruction, Warehouse shall not be liable for such failure.

## Section 6 -   HANDLING

(a)      Unless Depositor declares in writing, on or before arrival of car, rail, truck or other vehicle, that all dunnage or fastening salvaged therefrom is to be returned to Depositor or stored for Depositor, Warehouse may claim ownership of, or arrange for disposal of, such dunnage or fastening under this section 6(a); *provided however,* that Warehouse shall comply with the provisions of Schedule 4 regarding its storage of and accounting for pallets owned or purchased by Depositor.

DocuSign Envelope ID: F3556A65-8016-4DA6-A620-0595FB4299B0

(b)     Except to the extent that additional charges are mutually agreed to by the Parties and are specified in Schedule 1, Warehouse's rates and charges set forth in section 4(a) above shall include (i) labor for unloading Goods from box cars or trailers at Facility door, additional expenses incurred by Warehouse in unloading damaged Goods, unloading or disposing of dunnage, and additional expenses incurred in unloading box cars or trailers not at Facility door, and (ii) additional labor and material provided by Warehouse used in loading trucks or other vehicles when Goods are released or ordered out of the Facility.

(c)     Warehouse shall not be liable to carriers designated by Depositor for demurrage, for delay in unloading inbound trucks or other vehicles, or for delays in obtaining and loading trucks or other vehicles for outbound shipping, unless caused by Warehouse's negligence or willful misconduct.  Otherwise, Depositor will be liable for such carriers' demurrage or detention charges.

## Section 7 -    ACCEPTANCE OR SHIPPING REQUIREMENTS

No Goods shall be accepted, transferred, or shipped, until the receipt by Warehouse of complete, legible, comprehensive instructions, duly signed by Depositor.  Goods may be delivered upon instruction of Depositor by telephone in accordance with a prior written agreement where no negotiable Warehouse Receipt is outstanding, provided that Warehouse, under those circumstances, shall not be responsible for the loss or error occasioned thereby, unless the result of Warehouse's negligence or willful misconduct.  Warehouse's liability for Goods lost due to inbound delivery or outbound shipping error shall be limited in accordance with the provisions of section 10(g) herein.

## Section 8 -    EXTRA SERVICES (SPECIAL SERVICES)

Special services requested by Depositor shall be listed in Schedule 4.  Except to the extent that additional charges are mutually agreed to by the Parties and are specified in Schedule 1, the provision of special services (including but not limited to the following) has been priced into Warehouseman's Storage Charges or Accessorial Charges as set forth in Section 4(a) above:

(a)     Temperature control.

(b)     Compliance with any applicable requirements of California law under Warehouse's ABC type 14 license for public warehousing of alcoholic beverages, and with any applicable requirements of federal law relating to bonded warehouses.

(c)     Warehouse labor required for any Service other than securing, stowing and storing Goods.

## Section 9 -    MINIMUM CHARGES, IF ANY (CHECK BOX IF APPLICABLE)

--------------------------------------------------------------------------------☐

## Section 10 - LIABILITY AND LIMITATION OF DAMAGES

(a)     Warehouse shall not be liable for any loss or injury to Goods stored, however caused, unless such loss or injury resulted from the failure of Warehouse to exercise such care in regard to stored Goods as a reasonably careful and prudent person would exercise under like circumstances, and Warehouse will not be liable for damages which could not have been avoided by a person exercising reasonably careful and prudent judgment under like circumstances. Warehouse shall not be responsible for Goods resting in rail cars or trucks parked at the entrance to the Facility except in situations where Warehouse is responsible for delay, demurrage or detention charges under section 6(c) of this Contract.

(b)     Goods in the Facility shall be insured by Warehouse against loss or injury, however caused.  The amount of such insurance coverage shall be $50,000, which also shall be the limit of Warehouse's liability under sections 10(a) through (i) of this Contract.

(c)     All Goods secured and shipped by Warehouse shall be at Depositor's risk of loss for damage or delay when caused by any circumstance enumerated in sections 5(d) or 5(e) of this Contract.

(d)     Warehouse shall not be responsible for shrinkage or loss in weight, nor loss or damage to Goods resulting from improper or insufficient packing, cooperage, boxing, crating, wear and tear or inherent qualities of the Goods.

(e)     Depositor agrees to shrinkage allowance of one and one-half (1.5%) percent of total throughput between two consecutive certified physical inventories, and Warehouse shall not be liable for such shrinkage, whether caused by loss of or damage to Goods.

(f)     Where physical inventories disclose differences in stock, the Parties agree to average the values of all overages and shortages, adjust for any shrinkage allowance under Section 10(e) and correct the book figures accordingly.  If after such averaging, there is a net credit due to Depositor or a net debit due from Depositor resulting from bookkeeping errors or any other factor, the net credit or net debit shall be satisfied within 10 days.

(g)     In the case of Goods lost or damaged due to a cause for which Warehouse is responsible under this Contract, as adjudged by a court of competent jurisdiction, the measure of damages and limitation of liability stipulated herein shall be applied.  The measure of damages shall be the full value (as documented by Depositor) of the lost, damaged and/or destroyed Goods, plus any other charges or assessments incurred by Depositor in securing, shipping and storing such Goods in the Facility, less the amount realized from salvage as agreed by the Parties under Schedule 4.

(h)     In case of Goods lost or misplaced in the Facility, Warehouse shall be allowed seven (7) business days in which to locate such Goods after a receipt of a written inquiry from Depositor.

(i)     Goods which are perishable or otherwise susceptible to damage through temperature changes, atmospheric conditions, or other causes incident to general storage may be accepted in general storage (with waiver of special services in section 8 and Schedule 4), upon Depositor's prior written request and acceptance in writing by Warehouse.  Despite the previous sentence, Warehouse shall not be held responsible for damages to such Goods as might result from normal and customary general storage conditions.

(j)    The liability referred to in sections 10(a) through 10(i) of this Contract shall be Depositor's exclusive remedy against Warehouse for any claim or cause of action whatsoever relating to loss, damage and/or destruction of Goods and shall apply to all claims, including inventory shortage and mysterious disappearance claims, unless Depositor proves by affirmative evidence that there was gross negligence or willful misconduct by Warehouse, or that Warehouse converted the Goods to its own use.  Depositor waives any rights to rely upon any presumption of conversion imposed by law.  In no event shall Depositor be entitled to special, exemplary or punitive damages.

## Section 11 -  NOTICE OF CLAIMS

(a)    Claims by Depositor and all other persons must be presented in writing to Warehouse within a reasonable time, and in no event longer than either ninety (90) days after release of Goods by Warehouse to Depositor or ninety (90) days after the Depositor of record is notified by Warehouse that loss, damage and/or destruction to some or all of the Goods tendered to Warehouse has occurred, whichever time is applicable.

(b)    No action may be maintained by Depositor or others against Warehouse for loss or injury to the Goods stored unless a timely written claim has been given as provided in paragraph (a) of this section and unless such action is commenced either within six (6) months after the date of release of Goods by Warehouse to Depositor or within six (6) months after the Depositor of record is notified that loss, damage and/or destruction to part or all of the Goods tendered to Warehouse has occurred, whichever time is applicable.

(c)    When Goods have not been released by Warehouse, Warehouse shall give written notice of any known loss, damage and/or destruction to the Goods by certified mail, return receipt requested, or by any other notification method permitted under section 13(e) of this Contract to the Depositor of record within 30 days after such loss, damage or destruction becomes known to Warehouse.  If notice is given by Warehouse, then the time limitation for presentation of a claim in writing and maintaining of an action begins three (3) calendar days after the date of mailing of such notice by Warehouse.

## Section 12 - LIENS

(a)    Warehouse shall have a possessory lien against all Goods of Depositor stored in the Facility, or on the proceeds thereof, for all charges owed to Warehouse for storage, transportation (including demurrage and terminal charges), and labor with respect to such Goods covered by a particular Warehouse Receipt issued to Depositor.  The possessory lien shall include, without limitation, advances or loans by Warehouse in relation to such Goods and any expenses necessary for their preservation or reasonably incurred on their sale pursuant to law.

(b)    Warehouse shall have the right to refuse release of the Goods covered by a Warehouse Receipt when monies are due from Depositor under such Receipt.

(c)    The Warehouse's possessory lien may be enforced by public or private sale of the Goods in block or in parcels at any time after thirty (30) days' prior written notification to Depositor and to all persons known to claim an interest in the Goods.

(d)    Warehouse has the right to claim and to enforce, as provided by law, a security interest in Goods it holds under a Warehouse Receipt for amounts loaned or advanced to the Depositor of record pursuant to such Receipt.

## Section 13 - GENERAL PROVISIONS

(a)    **Governing Law.**  This Contract shall be construed in accordance with the substantive laws and regulations of the State of California (including, without limitation, Article 7 of the Uniform Commercial Code, as most recently revised and thereafter enacted in California, and all applicable California regulations relating to storage of alcoholic beverages), except to the extent that mandatory laws, rules and regulations of the United States require otherwise.

(b)    **Independent Contractors.**  The Parties recognize and agree that the relationship created between them by this Contract is that of independent contractors.  Neither of them is empowered under this Contract to determine the manner and means by which employees or agents of the other perform services hereunder.  The Parties respectively are engaged in distinct and different businesses (as a beverage company in Depositor's case, and as a provider of specialty storage services in Warehouse's case), and no employee of either Party shall be treated as an employee of the other for any purpose.

(c)    **Changes in Scope**.  The Parties may agree at any time to expand or reduce the scope of this Contract in terms of the Goods, Services or facilities it covers.  Any such changes shall be reduced to writing and executed by both Parties as a schedule or amendment hereto.

(d)    **Other Amendments**.  Any amendments to other provisions of this Contract (including changes to pricing provisions in Schedule 1) shall be reduced to writing and executed by both Parties, and shall become effective on an agreed date after they are fully executed.

(e)    **Notices**.  Any notice or other communication relating to the transactions contemplated by this Contract shall be in writing, shall be sent with postage or other delivery fees prepaid, and shall be deemed to have been given when sent: (i) by certified mail, return receipt requested, (ii) by premium private courier or delivery service to the addresses recited above, (iii) by fax, with proof of receipt by the intended recipient, (iv) by email with proof of receipt by the intended recipient or (v) in such other manner or to such other address as shall have been designated in writing to the sending Party by the Party to which such notice or other communication is to be given.

(f)    **Non-Disclosure of Information, Statistics**.  Each Party agrees to keep confidential any information provided to it by the other Party relating to such other Party's operations or business activities, including, but not limited to, the names of suppliers, carriers, vendors and customers. Each Party agrees to hold all such information in confidence and shall not use any such information other than for the benefit of the other Party or in performance of its obligations under this Contract.  Neither Party shall disclose any information regarding this Contract or any amendments or attachments hereto, except: (i) as may be required by law or regulation; (ii) as is necessary to effect or further the purposes of this Contract; (iii) when such disclosure is between a parent and its subsidiary or corporate affiliate; or (iv) when required in connection with an audit by an accounting or law firm, so long as the disclosing Party is responsible for ensuring

compliance with this confidentiality requirement by such firm. Notwithstanding the foregoing, each Party is entitled to use all information provided by the other in the course of performing under this Contract in an anonymous form, unidentifiable as to source, for various internally developed statistical, analytical, and data file maintenance purposes.

**(g)    Counterparts**. This Contract may be executed in one or more counterparts and each of such counterparts shall, for all purposes, be deemed to be an original, but all such counterparts shall together constitute one and the same instrument. Facsimile signatures shall be deemed original signatures.

**(h)    Dispute Resolution**. The Parties agree that they will work in good faith to resolve any disputes arising under this Contract. Any dispute between the Parties arising out of or in connection with this Contract or any alleged breach hereof shall first be submitted for good faith discussion and possible resolution by senior managers of each Party. If either Party notifies the other of such a dispute, the other Party agrees to designate a senior manager to participate in such discussion, whereupon the senior managers of each Party shall discuss and amicably attempt to resolve the dispute within no more than thirty business days. If the Parties are unable to resolve the dispute within this period, either Party may pursue other means of dispute resolution, *provided however,* that suits at law or in equity relating to this Contract (i) may not be brought in the form of a class action or any other type of collective litigation, and (ii) must be brought before a federal or state court of competent jurisdiction sitting in or for Napa County, California. The prevailing Party in any such suit shall be entitled to reasonable legal fees and expenses in connection with such litigation.

**(i)    Assignment**. Except as expressly set forth within this Contract, neither Party may assign, voluntarily, by operation of law or otherwise, any rights or delegate any duties under this Contract without the other Party's prior written consent, which consent will not be unreasonably withheld; *provided however*, that such consent shall not be required in the case of a merger, acquisition or sale of all or substantially all of the assets of a Party, subject to the successor entity expressly assuming the obligations of the assigning Party. This Contract shall bind and inure to the benefit of the Parties and their respective successors and permitted assigns.

**(j)    Entire Agreement**. This Contract cancels and supplants any and all other written or oral agreements and understandings between the Parties regarding the storage of Goods.

**(k)    Headings; Survival Provision**. Any headings or numbering of paragraphs or sections of this Contract are for organizational convenience only, and all terms and conditions of this Contract are intended to take precedence over any such heading or numbering. If any part, term, section, paragraph or provision of this Contract is found or declared to be invalid or unenforceable for any reason, the remainder hereof shall continue in full force and effect.

**(l)    Waiver**. The failure of a Party to object to or take action with respect to any breach of a term of this Contract by the other Party shall not be construed as a waiver of any rights hereunder by the non-objecting Party, nor of any claims, past, present or future, for any breach of this Contract.

**Phoeno Wine Company, Inc.**

Sign: _____

Name: Jeff Shaw
_____

Date: 6/27/2022
_____

**Orion Warehousing Services**

Sign: _____

Name: Debbie Payton
_____

Date: 6/27/2022
_____

DocuSign Envelope ID: F3556AC5-8016-4DA6-A620-0599FB4299B0

## SCHEDULE 1

### Schedule of Rates and Charges

**Inbound (Receiving) Charges by Warehouse** – $7.00 per incoming pallet billed upon Tender of Goods.

**Outbound (Release) Charges by Warehouse** – $7.00 per outgoing pallet billed upon Tender of Goods. $3.00 for every bill of lading prepared by Warehouse to be billed upon Release of Goods to the Warehouse.

**Recurring Charges by Warehouse** – $5,500 per month ($1.10 per square foot per month).

Trucking Charge by Warehouse – If Depositor requests Warehouse to arrange for trucking services, a written quote for such services must be sent to and approved by Depositor before loading is initiated.  Any such quote shall include current proof of the service provider's necessary federal or applicable intrastate authority to engage in and/or arrange for such services. Under no circumstances, however, shall Warehouse be deemed vicariously liable for death, bodily injury or property damage arising from operations by an authorized carrier chosen by either Party.

No other rates or charges shall be assessed by Warehouse against Depositor for Goods or services within the scope of this Contract except upon Depositor's prior written consent to a specific quote by Warehouse.  Copies of all such quotes and consents (or links to electronic copies) shall be added to this Schedule 1.

**SCHEDULE 2**

**Description of Goods, as Amended from Time to Time**

DocuSign Envelope ID: F3556AC5-8016-4DA6-A620-0509FB4299B0

## SCHEDULE 3

### Warehouse Receipts

**Warehouse shall create each Warehouse Receipt by filling out a "Warehouse Receipt" (see form below) upon completion of unloading, counting and storing of the Goods by 5 pm Pacific Time on the day the Goods are physically tendered to the Warehouse.**

**[Written or electronic copies of fully executed Warehouse Receipts shall be added to this Schedule 3 as generated]**

Nonnegotiable Warehouse Receipt
Phoeno Wine Company, Inc.
1166 Commerce Boulevard
American Canyon, CA 94503

Date: _____

1.      This is to certify that Phoeno Wine Company, Inc., herein referred to as "Warehouse," has received in its storage facility located at _____ (the "Facility") for the account of _____ (the "Depositor"), in apparent good order except as noted on this document (contents, condition, and quality otherwise unknown), the following described property (the "Goods"), subject to all of the terms and conditions contained in this document and in that certain Storage Agreement for Merchandise Warehouse executed by and between Warehouse and Depositor on _____ (the "Contract"). The Goods are to be delivered to Depositor or to such other person or entity specified by Depositor upon payment of all past due storage, handling, and other charges.

Description of Goods:

Lot No.:

Liability is limited as per Section 10 of the Contract.

2.      Claims for loss or damage must be presented timely and in writing as per Section 11 of the Contract.

3.      Warehouse claims a lien for all lawful charges for storage and preservation of the Goods covered by this Receipt, and for all lawful claims for money advanced, interest, insurance, transportation, labor, weighing, coopering and other charges and expenses in relation to such Goods.

DocuSign Envelope ID: F3556AC5-8016-4DA6-A620-0599FB4299B0

Phoeno Wine Company, Inc.


By: _____
Typed Name: _____
Title of Officer or Authorized Representative: _____
Dated: _____

## **SCHEDULE 4**

## **Description of Any Special Services to be Provided by Warehouse**

(Check ☐ if applicable)