**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| PHOENO WINE COMPANY, INC., et al. | ) | Case No. 23-10554 (KBO) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Hearing Date:  October 5, 2023 at 3:00 p.m. (ET)** |
| | ) | **Objections Due: September 26, 2023 at 4:00 p.m. (ET)** |

**MOTION OF DON A. BESKRONE, CHAPTER 7 TRUSTEE, FOR AN ORDER (A) AUTHORIZING THE PRIVATE SALE OF CERTAIN ASSETS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES, (B) AUTHORIZING PURCHASER TO FULFILL EXISTING CUSTOMER ORDERS, (C) AUTHORIZING ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, (D) AUTHORIZING THE TRUSTEE TO SERVE NOTICE OF THIS MOTION ON CUSTOMERS BY EMAIL, AND (E) GRANTING RELATED RELIEF**

Don A. Beskrone, the Chapter 7 Trustee (the "Trustee" or "Seller") [1] of the above-captioned

debtors (collectively, the "Debtors") and their estates, by and through his proposed undersigned

counsel, hereby submits this motion (the "Motion") for entry of an order, substantially in the form

attached hereto as **Exhibit A** (the "Proposed Order"), pursuant to sections 105(a), 363, and 365 of

title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), rules 2002,

6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules

2002-1 and 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States

Bankruptcy Court for the District of Delaware (the "Local Rules"), (i) approving and authorizing

the private sale on an "AS IS, WHERE IS" basis of certain assets of the Debtors to Liquid Lotus

Corporation (the "Purchaser") free and clear of all liens, claims, encumbrances and other interests,

(ii) authorizing Purchaser to fulfill existing Customer orders, (iii) authorizing assumption and

---

[1] Capitalized terms not otherwise defined herein shall have the meaning given to such terms in the Asset Purchase Agreement attached to the Proposed Order as **Exhibit 1**.

assignment of certain executory contracts and unexpired leases, (iv) authorizing the Trustee to serve notice of this Motion on Customers by e-mail, and (v) granting related relief.  In support of the Motion, the Trustee relies on the Declaration of Don A. Beskrone in support of the Motion attached as **Exhibit B** hereto.  In further support of the Motion, the Trustee respectfully represents as follows:

## PRELIMINARY STATEMENT

As described herein, the Trustee and Purchaser have reached agreement on a transaction that includes, among other things, cash consideration to fund the administration of these Estates and a process by which Purchaser is affording Customers until December 15, 2023 to elect to receive their ordered Wine at no additional cost, or by one of several methods at the Customer's expense.  And only after December 15, 2023, and only with respect to any Wine that is not subject to a timely Customer Election (i.e., the "Forfeited Wine"), will the Purchaser take title to the Forfeited Wine free and clear of all liens, claims and encumbrances.  **Importantly, title to any Wine will NOT be transferred to Purchaser until expiration of the Election Notice Period and only then with respect to Wine that is not subject to a timely submitted Customer Election.**  While the proposed transaction may not be perfect in the eyes of all stakeholders, it is by far the highest and best offer received to date by the Trustee.  In the event this Motion is not approved, the Trustee will likely have no other option than to abandon the Held Wine and reject the Warehouse Lease, leaving the Debtors' approximately 24,000 Customers, the Prepetition Lenders, the landlord for the Warehouse and any other interested parties to attempt to resolve their competing claims in a non-bankruptcy forum.

## JURISDICTION AND VENUE

1.       The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over these chapter 7 cases (the "Cases") and this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012.

2.       This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory and legal predicates for the relief requested herein are sections 105, 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, and 9014, and Local Rules 2002-1 and 6004-1.

3.       Pursuant to Local Bankruptcy Rule 9013-1, the Trustee consents to the entry of final orders or judgments by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## BACKGROUND

### A.       Procedural Background

4.       On May 1, 2023 (the "Petition Date"), the Debtors filed voluntary petitions under Chapter 7 of the Bankruptcy Code commencing these chapter 7 cases (the "Cases").  On the same date, the Debtors filed their schedules of assets and liabilities and statement of financial affairs [Docket Nos. 1].

5.       Following the filing of the bankruptcy petitions, the United States Trustee for the District of Delaware appointed Don A. Beskrone to serve as Chapter 7 Trustee in the Cases.  A meeting of creditors under and pursuant to 11 U.S.C. § 341(a) was held and concluded on June 13, 2023.

6.      The Trustee has not filed a motion to operate the businesses of the Debtors pursuant to 11 U.S.C. § 721.  The Trustee understands the Debtors currently have no ongoing business operations.

**B.      The Debtors' Business and Assets**

7.      Prior to the Petition Date, the Debtors provided membership to an online wine marketplace for discovering and buying premium wine that randomly rewarded consumers with free upgrades to rare and private-stash bottles from prestigious wineries.  The Debtors' records reflect they have approximately 24,000 Customers (the "Customers").  The Debtors' principal place of business and the location of their principal assets is 1166 Commerce Blvd., Suite C & D, American Canyon, CA  94503 (the "Warehouse").  The Debtors currently house approximately 500,000 to 550,000 bottles of wine and champagne (collectively, the "Held Wine") in the Warehouse, which consists of approximately 106,000 square feet of storage space they lease under a sub-sublease agreement, dated October 29, 2021 (the "Warehouse Lease").  The Warehouse is a secured and climate controlled facility specifically tailored to store the Held Wine in an appropriate manner and at the appropriate temperature.  The monthly rent on the Warehouse Lease is approximately $102,000 plus the cost of utilities, security and the like.  Following approval of the Cash Collateral Motion, the Trustee was able to pay rent on the Warehouse Lease for the month of June 2023, however, because the Estates do not hold sufficient cash, the Trustee has not paid any additional rent.  The landlord for the Warehouse is currently holding a security deposit of $105,140.00.

8.      Substantially all of the Held Wine is in cases, stacked on pallets and organized in the Warehouse according to vintage (**not** by Customer).  Almost all of the pallets of Held Wine are stored on shelving that reaches approximately 30 feet above the

floor of the Warehouse and fulfillment (so that a Customer's ordered bottles can be picked, packaged and shipped) requires the use of a forklift. It is physically impossible for Customers to personally retrieve bottles of wine they ordered. A small number of cases of wine (approximately 15-20 cases) appear to have been prepared for shipping and are sitting on the floor of the Warehouse and another number of cases (approximately 15-20 cases) appear to have been in the process of being prepared for shipping but were never finished on account of the shutdown of the Debtors' operations shortly before the Petition Date.

9.      From talking with multiple Debtor and non-Debtor sources who work in the wine industry, the Trustee understands that it could take many weeks and hundreds of man hours of labor to pick, pack and ship all of the existing Held Wine to fulfill the Debtors' pending Customer orders. The Trustee further understands that to transport the Held Wine to another warehouse facility could cost upwards of $1 million.

### The Debtors' Prepetition and Postpetition Financing

10.      Prior to the Petition Date, the Debtors, entered into that certain Plain English Growth Capital Loan and Security Agreement, dated as of May 18, 2022 the "Prepetition Note Purchase Agreements" and together with all loan and security documents related thereto, the "Prepetition Credit Documents") by and between Underground Enterprises, Inc. (the "Lead Borrower"), Phoeno Wine Company, Inc. (together with Lead Borrower, the "Co-Borrowers"), the TriplePoint Private Venture Credit Inc., TriplePoint Venture Growth BDC Corp., and TriplePoint Venture Lending Fund, LLC (together, the "Prepetition Lenders"), and TriplePoint Private Venture Credit, Inc., as collateral agent ("Prepetition Agent" and together with the Prepetition Lenders, the "Prepetition Secured Parties"). In connection with the Prepetition Note Purchase Agreements, the Prepetition Secured Parties claim to hold first priority, continuing liens and security interests in,

among other things, all of the Debtors' receivables, equipment, fixtures, general intangibles, intellectual property, inventory, investment property, deposit accounts, cash commercial tort claims, goods and personal property, and proceeds of each of the foregoing (collectively, the "Prepetition Collateral").  On May 19, 2022, the Prepetition Agent filed UCC-1 Financing Statements as to each of the Debtors with the Delaware Department of State asserting a lien in "all personal property of Debtor, whether now owned or hereafter acquired and wherever located." The Prepetition Agent asserts that the Debtors regularly and continuously represented to the Prepetition Lenders that the Debtors owned the Held Wine, which served as Prepetition Collateral.

11.      On July 13, 2023, the Court entered that certain *Order Approving Motion of Don A. Beskrone, Chapter 7 Trustee, for an Order Authorizing Use of Cash Collateral pursuant to 11 U.S.C. §§ 105, 362, and 363, Fed. R. Bankr. P. 4001, and Del. Bankr. L.R. 4001-2* [D.I. No. 136] (the "Cash Collateral Order"), which authorized the Trustee to use existing cash collateral held by the Debtors with the consent of the Prepetition Lenders in the aggregate amount of approximately $56,000 ("Cash Collateral") plus an additional $124,000 of "gift funding" (the "Gift Funding" and together with the Cash Collateral, the "Post-Petition Funding") provided by the Prepetition Lenders to enable the Trustee to pay certain administrative expenses of the Estates.  The Post-Petition Funding provided by the Prepetition Lenders enabled the Trustee to preserve the value of the Debtors' Estates while he explored options to administer these Cases and maximize the value of the Estates for the benefit of creditors.  The Post-Petition Funding, however, has been exhausted and the Trustee does not have access to any additional funding.

### The Pending Dispute Over Ownership of the Held Wine

12.      Ownership of the Held Wine is subject to *bona fide* dispute.  The Prepetition Lenders assert that the Held Wine is owned by the Debtors, and thus constitutes the Prepetition

Lenders' collateral.  If the Prepetition Lenders were determined by the Court to be correct, it is unlikely that the Debtors' Customers or other creditors would receive any recovery from the Debtors' estates.

13.     On the other hand, the Debtors and Customers assert that the Held Wine is owned by the Customers, and thus not property of the estates or the Prepetition Lenders' collateral.  The relationship between the Debtors and their Customers is governed by the "terms and conditions" (the "Terms") a copy of which is attached hereto as **Exhibit C**.  Customers were required to accept the Terms in order to place orders with the Debtors.  (Terms §2.1)  Pursuant to the Terms, the Debtors represented that they "rel[y] upon a network of independent vendors and manufacturers ('Vendors') who sell the goods advertised through the Services and ships them directly to you." (Terms§3.1)  However, the Debtors also retained the ability for their in-house wine experts to exercise their judgment to substitute bottles of comparable vintage in the event a chosen vintage is no longer available.  (Terms § 3.3-3.4)  If the Debtors and the Customers were determined to own the Held Wine, neither the Prepetition Lenders or any third parties would likely be willing to fund any process for the further administration of these Cases or the fulfillment of Customer orders.

14.     Litigation among the Prepetition Lenders, the Debtors and the Customers to determine ownership of the Held Wine likely would be extremely expensive, burdensome and time-consuming rendering it a practical non-starter.  Thus, if the dispute over ownership of the Held Wine is not consensually and quickly resolved, the Debtors' estates will likely be forced to reject the Warehouse sub-sublease and abandon all of the Debtors' interests in substantially all of their remaining assets including the Held Wine.  That would undoubtedly result in, among other things, (i) no recovery for the Customers and other creditors, (ii) massive administrative costs for the landlord of the Warehouse who would be left with physical possession of the Held Wine and

(iii) judicial chaos that would flow from litigation among the Prepetition Lenders, creditors, Customers and the Warehouse landlord who would be left to attempt to resolve their disputes in a non-bankruptcy forum.  This situation screams out for a practical resolution whereby most, if not all, stakeholders are given the opportunity to recover something in lieu of the alternative, which is nothing!

### The Trustee's Solicitation Process

15.    Since the Petition Date, the Trustee has worked diligently to secure the Debtors' assets, gain access to information and systems necessary to understand the Debtors' operations and assets and position the Debtors' assets (including the Held Wine) for a resolution among competing interests without the damage that would surely flow from litigation.  To that end, the Trustee solicited interest from a number of parties ("Potentially Interested Partners" or "PIPs") to acquire the Debtors' assets and provide a solution to the Debtors' estates inability to fulfill existing Customer orders.

16.    With the assistance of the Debtors' former employees, the Debtors' Prepetition Lenders, and others, the Trustee solicited offers from those PIPs that were identified to the Trustee as having shown an interest both prior to and following the Petition Date in acquiring some or all of the Debtors' assets.  As part of that process, the Trustee entered into nondisclosure agreements with 8 PIPs, which were given access to documents, information and other diligence concerning the Debtors' assets (including the Held Wine).  Most, if not all, of the PIPs immediately identified significant logistical concerns regarding fulfilling Customer orders on a potentially short timetable, for a massive quantity of Held Wine that has already been sold to Customers, and during some of the hottest months of the year thus possibly requiring additional protective shipping measures.  The Trustee facilitated multiple site visits by PIPs at the Warehouse, provided diligence requested by

the PIPs and convened numerous conference calls with PIPs to discuss the terms and conditions of possible transactions.

## The Liquid Lotus Offer

17.     Since late June 2023, the Trustee and Purchaser have been in negotiations concerning a possible transaction for the sale of the Debtors' assets and the fulfillment of existing Customer orders.  The Trustee and Purchaser, through their respective counsel, engaged in numerous discussions and exchanged numerous drafts of a proposed asset purchase agreement. Ultimately, on August 22, 2023, the Purchaser submitted the signed Asset Purchase Agreement attached to the Proposed Order as **Exhibit 1** (the "APA").  Through the APA, Purchaser has offered to pay the Estates $600,000 (the "Purchase Price") in exchange for the Acquired Assets (as defined in the APA) and, importantly, has agreed to conduct a process post-Closing by which existing Customers will be afforded an opportunity to elect have their orders fulfilled.  *See* APA §7.1 and the proposed Fulfillment Notice attached to the APA as "Exhibit A".

18.     As described in section 7.1 of the APA and the Fulfillment Notice, Customers will have until November 15, 2023 to elect to either (i) arrange for the pick-up of their ordered Wine personally from the Warehouse free of charge, other than incidental charges; (ii) have Purchaser package and facilitate shipping ordered Wine to the Customer at prevailing market costs (plus incidental charges such as employee time and boxes) to be paid by the Customer as set forth in the Fulfillment Notice; or (iii) continue to store their ordered Wine with Purchaser pursuant to Purchaser's storage terms, prices and conditions.  Purchaser has not agreed to absorb the costs of packaging, shipping or indefinitely storing Held Wine, nor would it be reasonable to expect Purchaser to do so and no other PIP has offered to do so.  Accordingly, if a Customer fails to make an election before the expiration of the Election Notice Period, legal title to any wine allocable to

such Customer will be forfeited and will then immediately vest in Purchaser free and clear of any liens, claims and encumbrances including those of any such Customer. **Importantly, and as set forth in the Fulfillment Notice, title to any Wine will NOT be transferred to Purchaser until expiration of the Election Notice Period and only then with respect to Wine that is not subject to a timely submitted Customer Election.** Accordingly, and notwithstanding the Terms from prior agreements between the Debtors and the Customers, the Trustee seeks to bind the Purchaser and the Customers to the Fulfillment Notice, which again permits Customers the ability to take possession of their Held Wine upon the consummation of the sale for up to 60 days.[2]

19.     The Trustee believes that the terms of Purchaser's offer, including the opportunity for Customers to elect to receive or continue to store their wine with Purchaser is reasonable, provides the best outcome achievable under the circumstances, maximizes the value of the Debtors' assets to the estates and is a valid exercise of the Trustee's business judgment.

### RELIEF REQUESTED AND BASIS THEREFOR

20.     By this Motion, the Trustee seeks entry of the Proposed Order, pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, and 9014 and Local Rules 2002-1 and 6004-1 (i) approving and authorizing the private sale on an "AS IS, WHERE IS" basis of certain assets of the Debtors to Liquid Lotus Corporation (the "Purchaser") free and clear of all liens, claims, encumbrances and other interests, (ii) authorizing Purchaser to fulfill existing Customer orders, (iii) authorizing assumption and assignment of certain executory contracts and unexpired leases, (iv) authorizing the Trustee to serve notice of this Motion on Customers by e-mail, and (v) granting related relief.

---

[2] Depending upon the volume of request by Customers to either pick up or have the Held Wine shipped, it may take time for the Purchaser to make the Held Wine available for the Customers by either method.

A. **Compliance with Local Rule 6004-1**

21.      Pursuant to Local Rule 6004-1, the following provisions are required to be highlighted in connection with the proposed sale of the Purchased Assets:

| Local Rule 6004-1 Disclosure | Terms of the Sale |
|---|---|
| **Sale to Insider** | Purchaser is owned by Jeffrey Shaw, who is the founder of the Debtors.  Mr. Shaw has not been an employee or officer of Underground Enterprises Inc. since May 15, 2022, and has not held ownership stock since June 9, 2022, though he remained a board member until May 1, 2023. Mr. Shaw also served as President of Phoeno Wine Company, Inc. until August 30, 2020, and has not been an employee, officer, or held ownership stock since that date. |
| **Agreements with Management** | N/A |
| **Releases** | Upon the Closing, the Trustee on behalf of the Estates will release Jeffrey Shaw from all claims and causes of action, whether choate or inchoate, known or unknown, contingent or non-contingent. APA §1.1(26); Approval Order ¶35. |
| **Private Sale / No Competitive Bidding** | The Trustee seeks approval of a private sale without an auction process, subject to higher and better offers.

Purchaser acknowledges that Seller, as a trustee subject to the oversight and under the jurisdiction of the Court, may be required to accept a higher and better bid for the Assets, and that an auction may be required to obtain higher or better bids for the Assets. If, prior to the sale hearing, Seller receives a higher and better offer for the Purchased Assets, Purchaser understands and agrees that Seller may convene an auction or some other process to obtain the highest and best bid for the Assets, provided that in no event shall Seller accept a higher and better offer for the Assets without affording Purchaser the right to submit a topping bid(s) at an auction or otherwise. APA §3.2 |
| **Closing and Other Deadlines** | Subject to the terms of the APA, the sale and purchase contemplated thereby shall take place at a closing (the "Closing") on a date that is two business days following the waiver or satisfaction of the closing conditions set forth in the APA, with the goal of Closing occurring by October 15, 2023, which may be extended by mutual agreement of the Parties. APA §3.2. |

| | |
|---|---|
| **Good Faith Deposit** | Purchaser has submitted to the Trustee a deposit in the amount of $60,000, which may be forfeited in accordance with section 3.7 of the APA. |
| **Interim Arrangements with Proposed Purchaser** | N/A |
| **Use of Proceeds** | The Trustee will hold the sale proceeds subject to any valid, perfected, and non-avoidable interest pending further order of the Court. |
| **Tax Exemption** | N/A |
| **Record Retention** | Purchaser has agreed to make documents and information reasonably available to the Trustee upon request. APA §7.3 |
| **Sale of Avoidance Actions** | Avoidance actions are not being sold to Purchaser. APA §1.1(26). |
| **Requested Findings as to Successor Liability** | Purchaser will not be responsible as a successor employer for any obligations of Seller or the Debtors. Approval Order ¶ O, 15, and 17.<br><br>Purchaser also seeks entry of the Proposed Order that provides that the Purchased Assets sold to Purchaser shall be transferred to Purchaser free and clear of all liens and all liabilities of any kind or nature whatsoever, whether at law or in equity, including without limitation, free and clear of any rights or claims based on theories of transferee or successor liability under any applicable law, whether arising before or after the Petition Date, save and excepting only those liabilities expressly assumed by Purchaser. APA §2.1.<br><br>Notwithstanding anything contained in the APA to the contrary, on the Closing Date and by virtue of entry of the Approval Order, Purchaser will acquire the Assets free and clear of all Liens but subject to section 7.1 of the APA and, provided however, that solely with respect to the Wine, and effective upon the Closing, Purchaser shall have all rights of custody, control, possession and authority to comply with section 7.1 hereof free and clear of any Lien, however, title shall pass to Purchaser only upon expiration of the Election Notice Period (as defined in section 7.1 of the APA) and only with respect to the Forfeited Wine (as defined in section 7.1 of the APA).<br><br>Purchaser is acquiring the Assets subject to all Assumed Liabilities including Cure Amounts. APA §1.1(9). |

| | |
|---|---|
| **Sale Free and Clear of Unexpired Leases** | Purchaser is acquiring the Assets, including the Wine, free and clear of all liens, claims and encumbrances, subject only to section 7.1 of the APA and the Fulfillment Notice. APA §2.1; Approval Order ¶J, M, 18 |
| **Credit Bid** | N/A |
| **Relief from Bankruptcy Rule 6004(h)** | The Trustee requests that the Proposed Order be made effective immediately upon entry.  Thus, the Trustee requests waiver of the fourteen day stay under Bankruptcy Rule 6004(h).  Approval Order ¶56. |

**B.  The Proposed Sale of the Purchased Assets Should Be Approved as the Product of the Trustee's Exercise of Sound and Reasonable Business Judgment**

22.    The Trustee submits that ample authority exists for the approval of the sale of the Purchased Assets.  Section 363(b) of the Bankruptcy Code permits a trustee to sell assets outside the ordinary course of business.  Section 363(b) of the Bankruptcy Code provides, in pertinent part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate[.]" 11 U.S.C. § 363(b).  Section 105(a) of the Bankruptcy Code further provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  Finally, Bankruptcy Rule 6004 states, in relevant part, that "[a]ll sales not in the ordinary course of business may be by private sale or by public auction." FED. R. BANKR. P. 6004(f)(1).

23.    Courts interpreting section 363(b) of the Bankruptcy Code have held that transactions should be approved when they are supported by the sound business judgment of the trustee.  *See, e.g.*, *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 145-47 (3d Cir. 1986) (implicitly adopting the articulated business justification and good faith tests of *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983)); *In re Delaware & Hudson R.R. Co.*, 124 B.R. 169, 176 (D. Del. 1991) (concluding that the Third Circuit had adopted

a "sound business purpose" test in *Abbotts Dairies*); *Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp.* (*In re Montgomery Ward Holding Corp.*), 242 B.R. 147, 153 (D. Del. 1999) ("In determining whether to authorize the use, sale or lease of property of the estate . . . courts require the debtor to show that a sound business purpose justifies such actions.").

24.     Here, the Trustee respectfully submits that the sale of the Purchased Assets to the Purchaser is both warranted and reasonable and well within the Trustee's sound business judgment. As a fiduciary of the Debtors and their stakeholders, the Trustee is charged with maximizing the value of the Debtors' assets.  As addressed above, the Trustee submits that selling and transferring the Debtors' interest(s) in the Purchased Assets at this time is warranted given its potential upside to creditors and the estate generally.  The Trustee determined that the offer received from the Purchaser was the highest and best.  Indeed, on a net basis, the bid of the Purchaser yields the highest and best offer—and one that will provide certainty without further risk to the estate. Further, the Trustee will provide all parties who previously expressed to the Trustee an interest in the Purchased Assets with notice of the filing of this Motion and the APA in the event they are interested in offering more than the Purchaser.

25.     The Trustee submits that the fairness and reasonableness of the consideration to be paid for the Purchased Assets by the Purchaser is demonstrated by the sale negotiations that took place before and after the Petition Date, the Trustee's sale efforts since his appointment, and the facts and circumstances of these Cases.  Further, the APA stems from good faith, arms' length negotiations among the parties.  Accordingly, the proposed sale to the Purchaser is both justified, necessary, and well within the Trustee's exercise of his sound business judgment.  For these reasons, the Motion should be approved by this Court.

**C. The Proposed Sale of the Purchased Assets Should Be Approved Free and Clear of All Liens, Claims, Encumbrances and Other Interests Pursuant to § 363(f) of the Bankruptcy Code**

26.     Section 363(f) of the Bankruptcy Code permits a trustee to sell property free and clear of another party's interest in the property if:

      a.  applicable nonbankruptcy law permits sale of such property free and clear of such interest;

      b.  such entity consents;

      c.  such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

      d.  such interest is in bona fide dispute; or

      e.  such entity could be compelled in a legal or equitable proceeding, to accept a monetary satisfaction of its interest.

11 U.S.C. § 363(f).  Because section 363(f) of the Bankruptcy Code is drafted in the disjunctive, satisfaction of any one of the five requirements will be sufficient to permit sale of the Purchased Assets free and clear of all encumbrances that may be asserted in these Cases.  *See Citicorp Homeowners Servs., Inc. v. Elliot (In re Elliot)*, 94 B.R. 343, 345 (E.D. Pa. 1988) (sale "free and clear" may be approved provided the requirements of at least one subsection are met); *see also In re Dundee Equity Corp.,* 1992 WL 53743, *4 (Bankr. S.D.N.Y. Mar. 6, 1992) (a "sale free of the interest concerned may occur if any one of the conditions of § 363(f) have been met").

27.     To maximize the value of the Purchased Assets, the Trustee proposes to transfer the Purchased Assets to the Purchaser free and clear of all liens, claims, interests, and encumbrances. In the event a valid lien encumbers any of the Purchased Assets, the holder(s) of such liens will be adequately protected by having their liens attach to the sale proceeds in the same order of priority, with the same validity, force and effect as such liens had in the Purchased Assets prior to the sale, subject to any claims and defenses the Trustee and the estate may have with respect to the same.

28.     With regard to the Held Wine, the relative ownership interest as between the Debtors and the Customers is subject to *bona fide* dispute and, thus, any interest of the Prepetition Lenders in the Held Wine is likewise subject to *bona fide* dispute.  Disposition of the Held Wine and administration of the Debtors' estates cannot afford to await the ultimate determination of the competing interests in the Held Wine.

29.     Finally, the Trustee submits that the absence of an objection to the relief sought in this Motion is, or should be deemed, consent within the meaning of section 363(f)(2) of the Bankruptcy Code.  *See Hargrave v. Township of Pemberton* (*In re Tabone, Inc.*), 175 B.R. 855, 858 (Bankr. D.N.J. 1994) (by not objecting to the sale motion, the secured creditor was deemed to consent under section 363(f)(2) of the Bankruptcy Code).

30.     Accordingly, the Trustee requests that the sale of the Purchased Assets be held free and clear of all liens, claims and encumbrances, with such liens, claims and encumbrances, if any, attaching to the net proceeds of the sale of the Purchased Assets.

**D. The Sale Should be Subject to the Protections of Section 363(m) of the Bankruptcy Code**

31.     Section 363(m) of the Bankruptcy Code provides, in pertinent part, that:

> The reversal or modification on appeal of an authorization . . . of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal

11 U.S.C. § 363(m).

32.     The Trustee requests that the Court find and hold that the Purchaser be entitled to the protections afforded by section 363(m) of the Bankruptcy Code.  Such relief is appropriate because the parties engaged in good faith, arm's length negotiations and all parties-in-interest will have the opportunity to review and object to the proposed sale.  *See also Esposito v. Title Ins. Co.*

*of Pa. (In re Fernwood Mkts.)*, 73 B.R. 616, 620 (Bankr. E.D. Pa. 1987) (stating that upon notice to lienholders, section 363(m) protects good faith purchasers).

**E. Assumption and Assignment of the Assumed Contracts is Warranted Under Section 365 of the Bankruptcy Code.**

33.     Pursuant to the APA, the Purchaser seeks to have assigned to it the Assigned Contracts listed on Schedule 1.1(8) to the APA.  Schedule 1.1(8) to the APA lists those Assigned Contracts (and the amount, if any, necessary to cure any default) that the Purchaser has designated for assumption and assignment under Section 365 of the Bankruptcy Code.  Importantly, under the APA, the Purchaser will be responsible to pay all cure amounts owing to non-debtor counterparties to Assigned Contracts.  APA §2.3.[3]

34.     Section 365 of the Bankruptcy Code provides, "(a) Except as provided in…subsections (b), (c), and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor."  11 U.S.C. § 365(a).

35.     The business judgment test is the standard applied by courts to determine whether an executory contract or unexpired lease should be assumed based on the debtor's determination that it would be beneficial to the estate. *See Sharon Steel Corp v. National Fuel Gas Distrib. Corp. (In re Sharon Steel Corp.)*, 872 F.2d 36, 40 (3d Cir. 1989); *see also In re Market Square Inn, Inc.*, 978 F.2d 116, 121 (3d Cir. 1992) (holding that the "resolution of [the] issue of assumption or rejection will be a matter of business judgment").  Courts generally will not second-guess a debtor's business judgment concerning the assumption of an executory contract. *See In re Exide Techs.*, 340 B.R. 222, 240 (Bankr. D. Del. 2006) (overturned on other grounds).

---

[3] In the event a non-debtor counterparty to an Assigned Contract disagrees with the proposed cure amount reflected on Schedule 1.1(8) of the APA, such party must timely file an objection to the Motion.  The Trustee and the Purchaser reserve all rights to remove any purported executory contract or unexpired lease from Schedule 1.1(8) to the APA prior to the Closing.

36.     To determine if the business judgment standard is met, the court is "required to examine whether a reasonable business person would make a similar decision under similar circumstances*." In re AbitibiBowater Inc.*, 418 B.R. 815, 831 (Bankr. D. Del. 2009).  A court should find that assumption or rejection is elected on "an informed basis, in good faith, and with the honest belief that the assumption … is in the best interests of [the debtor] and the estate."  *In re Network Access Solutions Corp.*, 330 B.R. 67, 75 (Bankr. D. Del. 2005).  Under this standard, a court should approve a debtor's business decision unless it was the product of bad faith or a gross abuse of discretion.  *See In re Federal Mogul Global, Inc.*, 293 B.R. 124, 126 (D. Del. 2003).

37.     As previously noted, the assumption of the Assigned Contracts is required so that they may be assigned to the Purchaser in connection with the Asset Sale.  The Purchaser will assume all Cure Costs associated with assumption and assignment of the Assigned Contracts. Because there is no cost to the Trustee associated with assumption and assignment, any decision to assume the Assigned Contracts is an exercise of the Trustee's sound discretion, as the assumption of the Assigned Contracts will facilitate the consummation of the Sale, thereby benefiting the Debtors' estates.  Accordingly, Trustee believes that assuming and assigning the Assigned Contracts is in the best interests of the Debtors' estates, their creditors, and all other parties in interest.  To the extent necessary, the Purchaser will present evidence to support adequate assurance of future performance at the hearing on approval of the Asset Sale.

**F.  Waiver of Bankruptcy Rule 6004(h)**

38.     Bankruptcy Rule 6004(h) provides that "[a]n order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  FED. R. BANKR. P. 6004(h).  The Trustee requests that the Proposed Order

be made effective immediately upon entry by order of waiver of the fourteen-day stay under Bankruptcy Rule 6004(h).

39.     The purpose of Bankruptcy Rule 6004(h) is to provide sufficient time for an objecting party to appeal before an order can be implemented.  *See* Advisory Committee Notes to FED. R. BANKR. P. 6004(h).  Although Bankruptcy Rule 6004(h) and the Advisory Committee Notes are silent as to when a court should "order otherwise" and eliminate or reduce the stay period, the leading bankruptcy treatise suggests that the fourteen-day stay period should be eliminated to allow a sale or other transaction to close immediately "where there has been no objection to the procedure."  10 COLLIER ON BANKRUPTCY ¶ 6004.10 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).  The treatise further provides that if an objection is filed and overruled, and the objecting party informs the court of its intent to appeal, the stay may be reduced to the time necessary to seek a stay, unless the court determines that the need to proceed sooner outweighs the interests of the objecting party.  *Id*.

40.     As set forth above, the APA is the result of good faith, arm's length negotiations, and the Trustee believes that the terms set forth in the APA are in the best interest of the estate. Accordingly, the Trustee hereby requests that the Court waive the fourteen-day stay period under Bankruptcy Rule 6004(h).

### G.     The Trustee Requests Notice as Proposed Herein Be Deemed Adequate Under the Circumstances of these Cases.

41.     The Trustee will provide notice of this Motion by serving a copy of the Motion, together with a Notice upon: (i) the Office of the United States Trustee for the District of Delaware; (ii) counsel for the Debtors.; (iii) counsel for Triple Point Private Venture Credit, Inc.; (iv) counsel for the Purchaser; (v) the non-debtor counterparties to the Assigned Contracts; (vi) all parties who have requested notice in the Debtor's case pursuant to Bankruptcy Rule 2002; (vii) all parties that

expressed any interest to the Trustee in acquiring any of the Purchased Assets; (viii) such entities that have filed financing statements with the Delaware Secretary of State; (ix) all applicable federal, state, and local taxing and regulatory authorities; (x) the landlord concerning the Warehouse, (xi) the states attorney generals for Delaware and California; (xii) all known creditors of the Debtors' (other than Customers) included in the Debtors' Schedules of Assets and Liabilities [D.I. Nos. 1 and 1]; (xiii) the Office of the United States Attorney for the District of Delaware; and (xiv) the California Department of Alcoholic Beverage Control.

42.     In addition, the Trustee proposes to send a copy of the Motion to all known Wine Customers via electronic mail where email addresses are available to the Trustee in the Debtors' books and records.  The Trustee understands that the Debtors and the Wine Customers regularly conducted business through e-mail and other online means and, therefore, the Wine Customers have a reasonable expectation of communication via e-mail from the Debtors.  Indeed, pursuant to the Terms & Conditions that all Customers were required to agree to in order to purchase wine from the Debtors, each Customer agreed:  "You agree that Underground Cellar may provide you with notices, including those regarding changes to the Terms, by email, regular mail, or postings on the Services."  (Terms§21.3).  Moreover, it would be cost-prohibitive to require the Trustee to serve a copy of the Motion upon all approximately 24,000 Wine Customers, which the Trustee estimates would exceed $25,000.  Thus, as part of the Proposed Order attached hereto, the Trustee requests a specific finding that service of the Motion upon the Wine Customers via e-mail as described herein is reasonable and adequate notice of the Motion under the circumstances of these Cases.

43.     In light of the nature of the relief requested herein and the circumstances of these Cases, the Trustee submits that no other or further notice should be required.

## CONCLUSION

**WHEREFORE**, for the foregoing reasons, the Trustee respectfully requests that the Court enter the Proposed Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and such other and further relief as the Court may deem just and proper.

Dated: September 12, 2023
Wilmington, Delaware

**ASHBY & GEDDES, P.A.**

*/s/ Gregory A. Taylor*
Gregory A. Taylor (No. 4008)
500 Delaware Avenue
P.O. Box 1150
Wilmington, DE  19899
Phone: (302) 654-1888
Facsimile: (302) 654-2067
Email :  gtaylor@ashbygeddes.com

*Counsel for Don A. Beskrone, Chapter 7 Trustee*