## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) ) | Chapter 7 |
| PHOENO WINE COMPANY, INC. et al., | ) ) ) | Case No. 23-10554-KBO |
| Debtors.[1] | ) ) ) | (Jointly Administered) |
| | ) ) ) ) ) ) | **Response Deadline: September 26, 2023 at 4:00 p.m. (EST)** <br> **Hearing Date: October 25, 2023 at 3:00 p.m. (EST)** |

## BRIEF OF THE AD HOC GROUP OF WINE CUSTOMERS
## IN SUPPORT OF MOTION AUTHORIZING SALE OF THE ASSETS OF DEBTOR

The Ad Hoc Group of Wine Customers (the "Customer Group"), the individual members of which are set forth in Appendix 1 to this motion, hereby file this brief in support of the motion of Don. A Beskrone, the Chapter 7 trustee ("Trustee") for the sale of the assets of debtors Phoeno Wine Company, Inc. ("Phoeno") and Underground Enterprises, Inc. DBA Underground Cellar ("Underground Enterprises") (and jointly, the "Debtor"), as set forth in Docket # 183 (the "Sale Motion").

## BACKGROUND

1.  Debtor, operating under the business name of Underground Cellar, was in the business of operating a marketplace for the sale of wine through the internet to individual customers throughout the United States and storing that wine until requested by the customer.[2]

---

[1] The last four digits of the Debtor's federal tax identification number are 5273.

[2] The facts set forth in this brief are supported by the Declaration of Andrew Priestes previously filed on August 30, 2023 as Docket # 161-2.

2. The Debtor would enter into an agreement with wineries for the winery to sell a certain number of bottles on Debtor's marketplace at retail value. However, a customer's purchase of wine might randomly be upgraded to a much more expensive bottle. Thus, a customer might purchase a $40 bottle, but the customer would be upgraded to a bottle worth $70 at retail. In some rare cases, the upgrade could be of a significantly greater value, such as upgrading a $40 bottle to a $500 bottle. (See FAQ, How Do Upgrades Work, attached hereto as Exhibit A).

3. In order to enable customers to purchase volumes of wine in excess of what a normal customer could store, Debtor provided a service known as its "CloudCellar" to its customers.

4. Debtor described the CloudCellar service as follows:

> When you buy bottles of wine on Underground Cellar, we store them for you in our temperature and humidity controlled facility here in Napa Valley. We call this the CloudCellar. Anytime you'd like to have them shipped to you, just login to your account, click "CloudCellar" at the top, and select which bottles you want shipped by clicking the "Add to Shipment" button.

(See June 8, 2017 Email, Exhibit B).

5. The CloudCellar service was operated by Phoeno and the wine is held in a leased space within a warehouse located at 1166 Commerce Blvd., Suite C&D, American Canyon, California. (Under Enterprises Schedule G, Line 2.3 [Dkt. 1]). The lessor is Biago Bros ("Landlord"), a large landlord in Napa, California. Id. The monthly rent, pursuant to Trustee, is $101,954.00. (Motion to Use Cash Collateral at p.5 [Dkt. No. 113]).

6. The purpose of the CloudCellar was to "expand your wine collection." Thus, a consumer could not only hold more wine than the consumer could otherwise physically store for the consumer's near-term use, the consumer could also, if they so choose, purchase and collect wine for future consumption as it was maintained in "ideal temperature/humidity" conditions.

7. One key aspect of the CloudCellar service was that Debtor would ship any stored wine on demand to its customers. (See May 8, 2016 Email, attached hereto as Exhibit C ("then whenever you want -- POOF! -- we ship the bottles you want from your collection directly to your door!")).

8. Debtor was never profitable, and on May 1, 2023, the Debtor filed for Chapter 7 bankruptcy.

9. The Customer Group is informed there are approximately 25,000 customers who held wine in the CloudCellar at the Petition Date. The number of bottles currently held, pursuant to Trustee, is between 500,000 and 550,000. (Motion to Use Cash Collateral at p.2 [Dkt. No. 113]). The Debtor scheduled the value of the wine held in the CloudCellar with a fair market value of $11,109,408.00. (Phono Schedule A, Line 23 [Dkt. No. 1]).

10. The Customer Group are owners of wine currently held in the CloudCellar (the "Stored Wine"). Each member of the Customer Group is scheduled as a "Customer" in Phoeno's Schedules.

11. Pursuant to the Phono's Schedules:

> A "Customer" as identified in the Schedules and SOFA as any retail client of the Debtor. Where "Customer" is used alone on Schedule F, it indicates that the Customer is storing wine that was purchased and is owned by the Customer at the Debtor's facility. The amount shown as the "claim" for such Customer on Schedule F is the amount paid by the Customer for the purchased wine.

(Phono Explanatory Notes for Schedules [Dkt. No. 1]).

12. The Customer Group represents 36 separate customers holding "Customer" claims, with scheduled claims ranging from $1,024.00 to $66,884.00. The total scheduled debt for the Customer Group is $546,220.

## THE COURT SHOULD GRANT THE SALE MOTION

13. The Customer Group has reviewed the Sale Motion. After conferring with counsel for Trustee and purchaser Liquid Lotus Corporation ("Purchaser"), the parties have agreed to limited revisions to the terms of sale that will be incorporated into the order approving the sale. These revisions can be summarized as follows: (i) language ensuring that the Trustee will turn over all records of customer purchasers to Purchaser upon closing; (ii) language clarifying that the records of Debtor will control in the event of any dispute between a customer and Purchaser regarding rights in pre-petition wines stored by Debtor; and (iii) language that notice regarding the right to fulfill will be placed on the website of Purchaser upon closing.

14. With these agreed upon revisions, the Customer Group fully supports the Sale Motion and requests the Court approve it.

15. The proposed sale complies with the contract between Debtor and Customer. While the terms are different than previously agreed to by the Customer Group, Debtor always had the right to change terms and conditions upon reasonable notice. (Terms and Conditions at § 20.1, Ex. C to Sale Motion ("Underground Cellar may make changes to the Universal Terms or Additional Terms from Time to Time. When these changes are made, Underground Cellar will make a new copy of the Universal Terms available.")) A customer who did not wish to proceed upon changed terms had the option of discontinuing use of the services offered by Debtor. (Terms and Conditions at § 20.2, Ex. C to Sale Motion.)

16. Under the Sale Motion, the options remain the same. The customers of Debtor will have the right to continue to store their wine with Purchaser in the Cloud Cellar, and thus accept the new terms, or to recover their wine at cost of shipping (or free, for in person pickup) if they do not wish to do so. Therefore, the terms of the sale, as to the customers, would be allowed

4

outside of bankruptcy and do not constitute a modification of an executory contract.

17. In addition, the Terms and Services of Debtor includes a forfeiture provision in it for individuals who cease using the service but continue to store wine. (Terms and Conditions at § 6.2, Ex. C to Sale Motion.) Thus the forfeiture provision in the Sale Motion does not constitute a significant departure from the already agreed upon terms. The Customer Group believes that the notice period for fulfillment provided by Debtor in the Sale Motion is reasonable.

18. Finally, the proposed sale benefits the bankruptcy estate. Debtor's Schedule F lists millions in "Customer" claims, which are claims by customers for wine purchased and held by Debtor. The proposed sale eliminates or significantly reduces these claims by allowing the customers of Debtor to recover their wine, either through fulfillment or by an agreement to continue storing the wine. Were the sale to fall through, the wine would be at risk of spoilage, damage, or seizure. Thus the sale benefits both the customers of Debtor, who will recover their wine, and the Debtor's estate, which will eliminate or reduce millions in unsecured liability.

## CONCLUSION

19. Based on the foregoing, the Customer Group requests the Court grant the Sale Motion, with the modifications agreed upon by Purchaser.

.

                                                Respectfully submitted,

Dated: September 25, 2023           /s/ Daniel M. Pereira
                                              Julie M. Murphy, Esq.
                                              Daniel M. Pereira, Esq.
                                              Stradley Ronon Stevens & Young, LLP
                                              1000 N. West Street, Suite 2600
                                              Wilmington, DE 19801
                                              Tel: (302) 295.3805
                                              Fax: (302) 295.4801
                                              Email: jmmurphy@stradley.com
                                                        dpereira@stradley.com

-and-

Bernard J. Kornberg, Esq.
Practus, LLP
58 West Portal Ave PMB 782
San Francisco, CA 94127
Tel:  (341) 234.6629
Email:  bernard.kornberg@practus.com
(Admitted *pro hac vice*)

*Attorneys for the Ad Hoc Group of Wine Customers*

**Appendix 1**

*List of Members of the Ad Hoc Group of Wine Customers[3]*

| Name | Schedule F Line | "Customer" Claim Amount |
|---|---|---|
| Amber L. Adam | 3.676 | $11,132.00 |
| Andrew Priestes | 3.986 | $54,050.00 |
| Ashley Lucibello | 3.1443 | $5,779.00 |
| Ben Switzer | 3.1662 | $37,294.00 |
| Brace William Ginsler | 3.1967 | $4,735.00 |
| Bradley Coppella | 3.2021 | $3,398.00 |
| Brennan Bubp | 3.2178 | $8,901.00 |
| Carl G. Yale | 3.2771 | $5,866.00 |
| Carrie Ridge | 3.2914 | $4,437.00 |
| Charles Siegel | 3.3139 | $20,181.00 |
| Cheryl Evans Sibson | 3.3212 | $6,959.00 |
| Dimitrios Malatos | 3.9158 | $66,884.00 |
| Eric Brown | 3.604 | $3,751.00 |
| Frank Nocito | 3.6525 | $12,883.00 |
| Jeffrey L Shada | 3.8528 | $28,059.00 |
| Jim Helmers | 3.7864 | $12,466.00 |
| John Andrew Fedorko | 3.9478 | $15,688.00 |
| Jonathan Kiely | 3.9896 | $2,743.00 |
| Kevin Koesters | 3.11287 | $8,701.00 |
| Leslie Katz[4] | 3.12161 | $1,928.00 |
| Maia Marusak | 3.12697 | $27,363.00 |
| Matt Van Tassell | 3.13664 | $40,070.00 |
| Melissa Blount | 3.13851 | $13,258.00 |
| Michael Busch | 3.14618 | $11,981.00 |
| Michael Costello | 3.14034 | $17,017.00 |
| Michael J. Konowicz | 3.14179 | $3,633.00 |
| Nathan Inks | 3.15005 | $3,288.00 |
| Nathan Palan | 3.15016 | $6,992.00 |
| Robert Newberry | 3.13840 | $1,024.00 |
| Prageeta Sharma | 3.16127 | $6,480.00 |
| Rhoda DeMuth | 3.16551 | $9,846.00 |

---

[3] The listing of the scheduled "Customer" claim amount each member of the Customer Group does not constitute an agreement or waiver of any right to contest the accuracy of the amount at a later time.

[4] Leslie Katz is a partner at Practus, LLP, the same firm as *pro hac vice* counsel Bernard J. Kornberg. Ms. Katz does not act as counsel to the Customer Group.

| Richmond C Douglas | 3.16739 | $26,338.00 |
|---|---:|---:|
| Samuel Weeman | 3.17662 | $8,060 |
| Stuart Ridge | 3.19043 | $12,565.00 |
| Sue Linder | 3.19054 | $31,040.00 |
| William Kim | 3.2063 | $11,430.00 |