IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>PHOENO WINE COMPANY, INC., *et al.*,<br><br>Debtors.[1] | Chapter 7<br><br>Case No. 23-10554 (KBO)<br><br>(Jointly Administered)<br><br>Related Docket No.: 183 |

**DECLARATION OF KEVIN THORNE IN SUPPORT OF
OPPOSITION OF TRIPLEPOINT CAPITAL
TO TRUSTEE'S MOTION TO SELL ASSETS FREE AND CLEAR**

I, Kevin Thorne, do hereby declare, under penalty of perjury, that the following is true and correct to the best of my information, knowledge, and belief:

1. I am over the age of eighteen, have personal knowledge of the facts in this matter, and if called upon to testify, could and would testify competently to the facts set forth in this declaration ("Declaration"). I submit this Declaration in support of the *Opposition of TriplePoint Capital to Trustee's Motion to Sell Assets Free and Clear* ("Opposition").[2]

2. I am the Chief Operating Officer of TriplePoint Capital LLC, the investment advisor for the TriplePoint lenders and TriplePoint Private Venture Credit, Inc., as Collateral Agent under the Loan Agreement ("Collateral Agent") in these cases. Through TriplePoint Capital LLC, I am authorized to make this Declaration on behalf of the TriplePoint lenders and the Collateral Agent. I have worked with TriplePoint Capital LLC since 2005, where I initially led and oversaw its Documentation and Legal Groups. I currently oversee the Operations Group.

---

[1] The debtors consist of Phoeno Wine Company, Inc. ("Phoeno") and Underground Enterprises, Inc. DBA Underground Cellar ("Underground Enterprises", and together with Phoeno, the "Debtors").

[2] Capitalized terms used but not otherwise defined in this Declaration have the meaning given to them in the Opposition.

ACTIVE\1603583469.1

3. I have been an attorney for over 27 years and have spent over 24 years in the venture lending industry. Prior to joining TriplePoint, I worked with TriplePoint's co-founders at Comdisco Ventures, where I documented and negotiated venture lending and leasing transactions and oversaw legal diligence. Prior to my employment with Comdisco Ventures, I was in-house counsel for Pacific Concessions, Inc. and was an associate attorney at the Bledsoe Cathcart Law Firm.

4. I am a member of the California Bar Association and hold a Juris Doctor from the University of the Pacific, McGeorge School of Law and a Bachelor of Arts in Humanities from San Jose State University.

5. Except as otherwise stated, all facts set forth in this Declaration are based on my personal knowledge, my discussions with those reporting directly to me, my review of relevant documents and contemporaneous business records regularly kept and maintained by TriplePoint, or my experience and knowledge of TriplePoint's operations. In making this Declaration, I have relied in part on information and materials that TriplePoint's personnel, agents, and advisors have gathered, prepared, verified, and provided to me, in each case, under my supervision, at my direction, and for my use in preparing this Declaration.

6. On May 18, 2022, the Debtors entered into that certain *Plain English Growth Capital Loan and Security Agreement* ("Loan Agreement") between TriplePoint, as lender, and the Debtors, as borrowers. A true and correct copy of the Loan Agreement is attached hereto as **Exhibit A**. Under the Loan Agreement, TriplePoint committed to make certain loans, including an initial commitment of $8,000,000, and additional commitments subject to the completion of certain milestones by the Debtors and approval by TriplePoint. Loan Agreement at 1, Annex A. The Debtors never satisfied those milestones, and the additional commitments were not provided.

The Debtors defaulted under the Loan Agreement in April of 2023 and, as of the Petition Date, owed TriplePoint approximately $8.3 million.

7. Under the Loan Agreement, the Debtors granted TriplePoint a first priority security interest in, and lien upon, all of the Debtors' assets, whether then owned or subsequently acquired (as further described and defined in the Loan Agreement, the "Collateral"). Loan Agreement ¶ 8. Pursuant to the Loan Agreement, the Collateral specifically includes all Inventory,[3] all Goods,[4] and all Intellectual Property.[5] On May 19, 2022, UCC-1 financing statements were recorded on behalf of TriplePoint against both Debtors, *i.e.*, Phoeno and Underground Enterprises. True and correct copies of the UCC-1 financing statements for Phoeno and Underground Enterprises are attached hereto as **Exhibit B** and **Exhibit C**, respectively. Each UCC-1 "covers all personal property of the Debtor, whether now owned or hereafter acquired and wherever located."

8. In connection with the Loan Agreement, Debtor Underground Enterprises, as the authorized representative of both Debtors, executed a Certificate of Perfection ("Perfection Certificate") for the benefit of TriplePoint. A true and correct copy of the Perfection Certificate is attached hereto as **Exhibit D**. In the Perfection Certificate, the Debtors represented that the only location of Collateral was 1166 Commerce Blvd Std. D, American Canyon, CA 94503, which is

---

[3] As defined in the Loan Agreement, "'Inventory' means any 'inventory,' as such term is defined in the UCC, now owned or acquired by any of You or in which any of You now hold or acquire any interest, and, in any event, shall include, without limitation, all Goods and personal property that are held by or on any of Your behalf for sale or lease or are furnished or are to be furnished under a contract of service or that constitute raw materials, work in process or materials used or consumed or to be used or consumed in any of Your businesses, or the processing, packaging, promotion, delivery or shipping of the same, and all finished goods, whether or not the same is in transit or in any of Your constructive, actual or exclusive possession or is held by others for any of Your account, including, without limitation, all property covered by purchase orders and contracts with suppliers and all goods billed and held by suppliers and all such property that may be in the possession or custody of any carriers, forwarding agents, truckers, warehousemen, vendors, selling agents or other Persons." Loan Agreement at 33–34.

[4] As defined in the Loan Agreement, "'Goods' means any 'goods,' as such term is defined in the UCC, now owned or hereafter acquired by any of You or in which any of You now hold or acquire any interest." Loan Agreement at 33.

[5] As defined in the Loan Agreement "'Intellectual Property' means all Copyrights; Trademarks; Patents; Licenses; source codes; trade secrets; inventions (whether or not patented or patentable); technical information, processes, designs, knowledge and know-how; data bases; models; drawings; websites, domain names, and URL's, and all applications therefor and reissues, extensions, or renewals thereof; together with the rights to sue for past, present, or future infringement of Intellectual Property and the goodwill associated with the foregoing." Loan Agreement at 33.

ACTIVE\1603583469.1

the address of the Warehouse, where no material assets of the Debtors other than the Stored Wine are located. The Perfection Certificate also included "a current listing of all Patents, Patent applications, Patent Licenses, Trademarks, Trademark applications, Trademark Licenses, Copyrights, Copyright applications and Copyright Licenses" owned by the Debtors as a schedule. The IP Schedule lists certain trademarks owned by the Debtors.

9. Further, in connection with the Loan Agreement, the Debtors and the lessor of the Warehouse, Biagi Bros., Inc., executed a *Plain English Landlord Representation and Waiver Agreement* (the "Landlord Waiver"), pursuant to which the Debtors informed the landlord that they "intend[ed] to keep personal property at the Premises," which included the Stored Wine. Landlord Waiver ¶ 4. A true and correct copy of the Landlord Waiver is attached hereto as **Exhibit E**. The Landlord Waiver expressly recognized TriplePoint's security interest in all of the Debtors' personal property. *Id.* ¶ 5.

10. Additionally, in connection with the Loan Agreement, the Debtors on multiple occasions provided TriplePoint with certain financial reporting, which included balance sheets for both Debtors. True and correct copies of balance sheets from Phoeno and Underground Enterprises, each dated as of the end of February 2023, are attached hereto as **Exhibit F** and **Exhibit G**, respectively. Notably, Debtor Phoeno repeatedly and consistently showed on its balance sheet as an asset "inventory" valued at between $9 million and $11.6 million between January 2022 and February 2023.[6] The value of this "inventory" included all Stored Wine. This is consistent with the Debtors' insurance coverage, which included coverage for "$10,500,000" in "Business Personal Property" at the Debtors' warehouse. A true and correct copy of the Debtors' *One Page Summary of Insurance* is attached hereto as **Exhibit H**. At all times prior to the Petition

---

[6] The Stored Wine is owned by Debtor Phoeno. Debtor Underground Enterprises apparently did not own any of the Stored Wine held at the warehouse.

Date, the Debtors maintained that they owned the Stored Wine and expressly represented and warranted the same to TriplePoint.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

_____
Kevin Thorne
Chief Operating Officer of TriplePoint Capital LLC