**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| PHOENO WINE COMPANY, INC., et al. | ) | Case No. 23-10554 (KBO) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**LIMITED OBJECTION OF LIQUID LOTUS CORPORATION
AND JEFFREY SHAW TO THE PARTICIPATION OF
VP2 SOLUTIONS, LLC OR ITS PRINCIPALS IN THE SALE
OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS**

Liquid Lotus Corporation ("Liquid Lotus") and Jeffrey Shaw, its principal ("Mr. Shaw," and together with Liquid Lotus, the "Limited Objectors"), hereby file this limited objection to the participation of VP2 Solutions, LLC or its principals in the sale of substantially all of the assets of the above captioned debtors ("Debtors") and in support of this limited objection, the Limited Objectors state as follows:

**Background**

1. Mr. Shaw was the founder of the Debtors; he has not been an employee or officer of Underground Enterprises Inc since May 15, 2022, and he has not held ownership stock since June 9, 2022, though he remained a board member until May 1, 2023. Further, Mr. Shaw also served as President of Phoeno Wine Company, Inc. until August 30, 2022, and has not been an employee, officer, or held ownership stock since that date.

2. On May 1, 2023 (the "Petition Date"), the Debtors each filed voluntary Chapter 7 petitions and for bankruptcy Don A. Beskrone, (the "Trustee") was appointed as the Chapter 7 Trustee for the estates.

3. As of the petition Date, Mr. Shaw was one of the Debtors' largest creditors with an unsecured claim of more than $150,000. See Schedule E of Underground Enterprises, Inc.

4.    Commencing in late-June or early July 2023, Mr. Shaw on behalf of his company Liquid Lotus, began negotiating with the Trustee for the sale of substantially all of the Debtors' assets. These negotiations ultimately culminated in an agreement between Liquid Lotus and the Trustee by and through which Liquid Lotus agreed, subject to Bankruptcy Court approval, to purchase substantially all of the Debtors' assets. On September 12, 2023, the Trustee filed the Motion for an Order (A) Authorizing the Private Sale of Certain Assets Free and Clear of Liens, Claims, Interests, and Encumbrances, (B) Authorizing Purchaser to Fulfill Existing Customer Orders, (C) Authorizing Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (D) Authorizing the Trustee to Serve Notice of this Motion on Customers by Email, and (E) Granting Related Relief [Docket No. 183] (the "Sale Motion").

5.    As more fully set forth in the Sale Motion, among other things, Liquid Lotus agreed to a fulfillment process by and through which the Debtors' former customers (collectively, the "Customers") would have a period of time to elect to either (i) arrange for the pick-up of their ordered wine personally from the warehouse free of charge, other than incidental charges; (ii) have Liquid Lotus package and facilitate shipping ordered wine to the Customer at prevailing market costs (plus incidental charges such as employee time and boxes) to be paid by the Customer as set forth in the attached fulfillment notice; or (iii) continue to store their ordered wine with Liquid Lotus pursuant to Liquid Lotus' storage terms, prices and conditions. Only if a Customer failed to make an election before the expiration of the delivery notice period, would legal title to any wine allocable to such Customer be forfeited and vest in Liquid Lotus free and clear of any liens, claims and encumbrances including those of any such Customer.

16346227/1

6. On September 26, 2023, VP2 Solutions, LLC ("VP2") filed an objection to the Sale Motion [Docket No. 220] by and through which VP2 objected to the sale on the basis that it was willing to pay more for the Debtors' assets.

7. On September 26, 2023, Timothy Bergman ("Mr. Bergman"), who upon information and belief is the principal of VP2, contacted Mr. Shaw via LinkedIn in which he stated that "[w]e submitted an overbid to the trustee today. Would like to offer a partnership to see if we can work together before we get into a bidding war." Mr. Shaw and Mr. Bergman subsequently had a brief telephonic conversation, during which, Mr. Shaw informed Mr. Bergman that he had no interest in colluding with Mr. Bergman with respect to the purchase of the Debtor's assets. Despite Mr. Shaw's lack of interest, on September 27, 2023, Mr. Bergman contacted Mr. Shaw again (this time via email) to lay out proposed terms of a proposed partnership. Significantly, in his email of September 27, 2023, Mr. Bergman stated "the only party that benefits from our competition is the BK estate." Mr. Shaw responded to both the email message and through LinkedIn, stating "I am not amenable to colluding with you on our bids for the assets out of bankruptcy." A copy of the LinkedIn and email exchanges are attached hereto as **Exhibit A.**

8. On September 28, 2023, a copy of the LinkedIn exchange was forwarded to the Trustee, after which the undersigned counsel for Liquid Lotus and counsel of the Trustee conferred about Mr. Bergman's solicitation of collusion. Further, counsel for the Trustee stated that Trustee would speak with the United States Trustee. Counsel for Liquid Lotus informed counsel for the Trustee that VP2 should be disqualified from bidding due to its collusive efforts.

9. On October 4, 2023, the Office of the United States Trustee contacted the undersigned counsel to inquire as to whether there were any connections between the Liquid Lotus and VP2. Undersigned counsel advised the United States Trustee, that there were no connections

between the parties, other than an inquiry in 2017 from Mr. Bergman to Mr. Shaw about a partnership that was rebuffed by Mr. Shaw.

10. On October 4, 2024, the Trustee notified Liquid Lotus that he had received a bid from VP2 that exceeded Liquid Lotus' bid, and the Trustee inquired whether Liquid Lotus would agree to continue the hearing to consider the Sale Motion so that the Trustee could conduct an auction. Liquid Lotus informed the Trustee that it would not participate in an auction with VP2 prior to the Court considering whether VP2 was barred from purchasing the assets from the bankruptcy estates due to its collusive conduct.

11. This is not a simple case of sour grapes (no pun intended). The Limited Objectors recognize the bankruptcy policy to maximize the value of a bankruptcy estate for the benefit of the debtor's creditors. Accordingly, competitive bidding for estate assets is strongly encouraged. That is exactly why collusive bidding is prohibited.

12. The underlying facts present a fundamental issue with respect to the integrity of the bankruptcy process. Other cases of attempted collusion or interference in the bankruptcy process have been taken very seriously by bankruptcy courts. See, e.g., Nieman Marcus Group Ltd. LLC (Case No. 20-32519; Bankr. S.D. Tex.) (in which the principal of a member of the creditors committee was slapped with charges of securities fraud, wire fraud, extortion, and obstruction of justice after attempted collusion with respect to the sale of estate assets). This Court should do the same.

13. To allow VP2 or any of its principals to participate in the sale process would countenance the actions of VP2 and its principal. Nor should the Court allow VP2's bid to whitewash its prohibited actions. Were the Court to allow VP2 to participate in the sale process,

16346227/1

it would be implicitly endorsing a party to attempt to collude with other bidders and then submit its own bid as a means of seeking forgiveness.  Bankruptcy does not work that way.

14. As evidenced by the communications from VP2 attached hereto as Exhibit A, VP2's hands are dirty and cannot be cleaned through its submission of an offer, and while the Limited Objectors realize that the eventual result may mean that the Trustee ultimately realizes a lower price for the estate assets, it would come at the expense of the integrity of the bankruptcy process.

## CONCLUSION

**WHEREFORE**, for the foregoing reasons, the Limited Objectors respectfully request that the Court enter an Order (i) denying VP2 and its principals the right to participate in any efforts to purchase assets of the Debtors, and (ii) granting to the Limited Objectors such other and further relief as the Court may deem just and proper.

Dated: October 5, 2023              **MORRIS JAMES LLP**

*/s/ Jeffrey R. Waxman*_____
Jeffrey R. Waxman (DE Bar No. 4159)
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
Telephone: (302) 888-6800
Facsimile: (302) 571-1750
E-mail: jwaxman@morrisjames.com

*Counsel to Liquid Lotus Corporation and Jeffrey Shaw*

16346227/1