UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: | Chapter 7<br>Case No. 23-10554(KBO) |
| PHOENO WINE COMPANY, INC., *et al.*, | (Jointly Administered) |
| Debtor. | 824 Market Street<br>Wilmington, Delaware 19801 |
| | Thursday, October 5, 2023<br>3:01 p.m. |

TRANSCRIPT OF ZOOM HEARING
BEFORE THE HONORABLE KAREN B. OWENS
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

| | |
|---|---|
| For the Chapter 7 Trustee: | Gregory A. Taylor, Esquire<br>ASHBY & GEDDES, P.A.<br>500 Delaware Avenue, 8th Floor<br>Wilmington, Delaware 19899-1150 |
| For the Liquid Lotus Corporation: | Jeffrey R. Waxman, Esquire<br>MORRIS JAMES LLP<br>500 Delaware Avenue, Suite 1500<br>Wilmington, Delaware 19801 |

(APPEARANCES CONTINUED)

| | |
|---|---|
| Electronically Recorded By: | Lisa Brown, ECRO |
| Transcription Service: | Reliable<br>1007 N. Orange Street<br>Wilmington, Delaware 19801<br>Telephone: (302) 654-8080<br>E-Mail: gmatthews@reliable-co.com |

Proceedings recorded by electronic sound recording: transcript produced by transcription service.

APPEARANCES (CONTINUED):

| | |
|---|---|
| For TriplePoint Capital: | Stuart Brown, Esquire<br>DLA PIPER LLC (US)<br>1201 North Market Street<br>Suite 2100<br>Wilmington, Delaware 19801<br><br>- and -<br><br>Eric Goldberg, Esquire<br>DLA PIPER LLC (US)<br>2000 Avenue of the Stars<br>Suite 400 North Tower<br>Los Angeles, California 90067-4735 |
| For VP2 Solutions, LLC: | Craig A. Burnett, Esquire<br>CRAIG A. BURNETT ATTORNEY AT LAW<br>250 D Street, Suite 206<br>Santa Rosa, California 95404 |
| For Ad Hoc Group of Wine Customers: | Bernard Kornberg, Esquire<br>PRACTUS LLP<br>210 Spear Street, Suite 1100<br>San Francisco, California 94105 |

# INDEX

STATUS CONFERENCE: PAGE

Agenda
Item 1: Motion for an Order (A) Authorizing the Private Sale of Certain Assets Free and Clear of Liens, Claims, Interests, and Encumbrances, (B) Authorizing Purchaser to Fulfill Existing Customer Orders, (C) Authorizing Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (D) Authorizing the Trustee to Serve Notice of this Motion on Customers by Email, and (E) Granting Related Relief [D.I. 183; 9/12/2023] 4

Court's ruling 12

Transcriptionist's Certificate 23

(Proceedings commenced at 3:01 p.m.)

THE COURT: Good afternoon. This is Judge Owens. We are gathered for a status conference in the Phoeno Wine Company case.

I understand there's been some back-and-forth regarding what today was supposed to be, which is the sale hearing. I'll turn the virtual podium over to Counsel for the Chapter 7 Trustee and you can tell me where things stand.

MR. TAYLOR: Good afternoon, Your Honor, Greg Taylor of Ashby & Geddes as Counsel to the Chapter 7 Trustee, Don Beskrone. Thank you for agreeing to hear us today as a status conference regarding the Trustee's sale motion.

We have one issue that the parties would like to address with Your Honor, but before turning to that and since this is really the first hearing that we've had in this case, I thought I should first ask if the Court would like a little bit of a background about the case and about how we got to where we are today.

THE COURT: I did read the sale motion, I do think I have some background, but I will defer to you.

MR. TAYLOR: Thank you, Your Honor. I'll try to skip over the stuff that's included in the sale motion then, Your Honor.

Skipping to, I guess, sort of the end of the Trustee's sale process, Your Honor, for the reasons that we

discussed in our briefing, the Trustee did embark on a solicitation sale process and, through that process, the Trustee engaged with a number of potentially interested parties, and ultimately entered into an asset purchase agreement with an entity named Liquid Lotus, which is represented by Mr. Waxman. That transaction, which is expressly subject to higher and better offers, envisions a sale of the debtors' owned assets for a purchase price of $600,000, and the fulfillment of customer orders by the buyer according to the process discussed in the sale motion and the APA.

TriplePoint and -- TriplePoint, which is the prepetition lender here, and certain other parties have filed objections to the sale motion, and we will be prepared to address those objections at the hearing on the merits. But for purposes of today, Your Honor, the issue, the background for the issue is this.

On September 26th, another entity called VP2 Solutions, Inc. submitted a competing offer and, as the Trustee was considering that offer, Mr. Waxman for Liquid Lotus brought to our attention a communication between the principals of VP2 and Liquid Lotus. Our initial reaction was that the communication was improper, and we brought it to the attention of the United States Trustee's Office. We had a number of conversations with the U.S. Trustee and understand

the U.S. Trustee has talked with Mr. Waxman as well.

We also spoke with counsel to VP2 and advised them that we view the communication as improper and likely disqualifying VP2 from the process. And counsel for VP2 told us that we didn't have a complete picture of the facts and circumstances, provided us with additional information, all of which we shared with the U.S. Trustee's Office as well.

VP2 also significantly increased its offer. Currently, VP2's offer is at least 25 percent over the amount of the Liquid Lotus offer.

To be clear, the Trustee has always intended that if he were to accept VP2's offer as an acceptable overbid to disclose to the Court as part of the sale hearing this issue regarding the communication as between the principals of the two bidders.

Ultimately, the Trustee did accept VP2's offer as an acceptable overbid, largely on the basis that while there may have been improper communication from VP2, it did not result in prejudice to the estates and in fact VP2's current offer is significantly higher than the Liquid Lotus offer. And there really isn't any prejudice to Liquid Lotus, who obviously knew about the communication and has now simply been overbid.

Liquid Lotus has a different point of view and believes VP2 should be disqualified, and has refused to

participate in further bidding until its concerns are brought before the Court, and that's the issue that we're here before Your Honor today.

The Trustee suggests that we proceed with the auction and all rights to challenge VP2's offer are reserved, and that can be addressed at the sale hearing if Liquid Lotus still feels it's necessary to do so, or we can simply proceed to seek approval of the sale to VP2 next week without an option. If Liquid Lotus refuses to participate in an auction, then it is free to address its objection in the context of the sale hearing if it so chooses.

That, in a nutshell, Your Honor, is the issue for today. Unless Your Honor has any questions for me, I'll turn the podium over.

THE COURT: Okay. Thank you very much for that recitation of where we are. I'll turn --

MR. BROWN: Your Honor, Stuart Brown, if I may. I'm sorry, I didn't mean to interrupt you.

THE COURT: Mr. Brown, I'd like to hear on the actual issue that's pending before me. I understand that you represent TriplePoint. If you have issues to discuss, I'm happy to hear them, but I want to hear from the issue on the bidding first. So --

MR. BROWN: Thank you, Your Honor.

THE COURT: -- I'll turn the podium over to Mr.

Waxman.

MR. WAXMAN: Good afternoon, Your Honor. May it please the Court, Jeff Waxman of Morris James on behalf of Liquid Lotus and Mr. Shaw, who is Liquid Lotus's principal.

Your Honor, this afternoon we filed a limited objection to the sale. I don't know if Your Honor has had a chance to read that.

THE COURT: I have not.

MR. WAXMAN: Okay. And I apologize for the lateness of getting it filed, Your Honor. We didn't know that there was going to be a status conference today until yesterday afternoon, so I do apologize.

Your Honor, if you look at the limited objection, which was filed this afternoon, you'll see that there are two documents which are attached as Exhibit A. They are communications from the principal of the other bidder and, pardon the pun, this is not intended to come across as sour grapes, but there are significant process issues at play here, and there's also an issue of time sensitivity given that this is an estate that has no money right now. There are continuing expenses that are accruing on a daily basis, including money that is due to the landlord at the warehouse, which is not an insignificant expense, there's also a significant expense that's being incurred in connection with utilities, all of which is going to have to be paid by

somebody in order to preserve the underlying value in the case, which is wine that is owned by the customers and other wine that may end up as property of the successful bidder.

Your Honor, as set forth in the limited objection, the bidder -- or the principal of the bidder solicited collusion with my client, which my client rejected, and the email and the LinkedIn messages are attached as an exhibit.

Liquid Lotus does not believe that it is appropriate for the bidder to participate in the process at all. As Your Honor is well aware, and I'm sure all of the parties in the court are aware, collusion is prohibited in bankruptcy. The maxim and goal of the Bankruptcy Code is to maximize the value of the estate for the benefit of creditors and, although in this case the other bidder has submitted a bid that is higher at this point than Liquid Lotus's bid, it comes at the expense of having a non-collusive, open process. And the language within the email in particular that competitive bidding will only benefit the bankruptcy estate strikes directly at the heart of the bankruptcy process, Your Honor. And the attempted whitewashing of their sales through submitting a bid after attempting to collude with my client should not be countenanced by this Court.

Unfortunately, again, there is a certain time sensitivity to this given the need for the sale to go forward and there needs to be a determination of whether or not there

should be an auction at the outset. My client will not participate in an auction until Your Honor has determined whether or not the other bidder can even participate in the process or whether it is barred by having unclean hands in this matter.

In light of the collusive efforts of the other bidder, Liquid Lotus respectfully submits that they should be barred and that the sale hearing on its merits should go forward with respect to whether or not TriplePoint's objection is valid or whether Liquid Lotus has submitted the highest and best bid from all parties that are capable of bidding.

Does Your Honor have any questions?

THE COURT: I do not. Thank you, Mr. Waxman.

MR. WAXMAN: Thank you, Your Honor, I appreciate it, and, again, my apologies for the late submission.

THE COURT: Okay. I'm happy to hear from any other party in interest who wishes to be heard in connection with the current issue before the Court.

MR. BURNETT: Your Honor, if I may? This is Craig Burnett for interested party VP2 Solutions.

THE COURT: Yes, please go ahead.

MR. BURNETT: Well, I've got to admit that it's a late-ditch attempt, it appears to me, of Liquid Lotus at simply just trying to eliminate the competition. I might

point out to the Court that there was no auction per se, there was no bidding. It's not any attempt at colluding between bidders, it was simply reaching out to see if the parties could work together after the sale. And I would like the opportunity, Your Honor, to be able to respond to the objection, it was only filed about two hours ago. And I think, once the Court is aware of all of the facts, that it will deny that objection and allow the sale either to my client or an auction, if necessary, to go forward.

THE COURT: Thank you, Mr. Burnett.

MR. BURNETT: And I might -- if I might also point out, Your Honor, as Mr. Taylor said, there's no prejudice to the estate, in fact, the estate benefits from it. And this is not a matter of parties attempting to collude at an auction, this is a private sale, and I'd like the opportunity to at least flesh out those communications between the principals.

THE COURT: Thank you, Mr. Burnett.

All right, anyone else?

MR. KORNBERG: Yes, Your Honor, Bernie Kornberg, I'm counsel for -- *pro hac* counsel for the ad hoc group of wine owners. We'd just like to make sure, I don't know what the terms -- if they've modified the terms of the proposed sale for the new purchaser, VP2. We negotiated some terms -- I imagine that they have some different terms rather than the

very bespoke fulfillment notice in it. We also have -- you know, we worked out with Mr. Waxman some additional language if the sale went forward. We probably would support a sale to another purchaser as long as it was along the same lines, but we'd like to make sure that, if an auction is going to be performed on the terms of any -- any revised terms are put well in advance so that we have a chance to review them.

THE COURT: All right, thank you. I understand.

All right, anyone else?

MR. BROWN: Your Honor, may I be heard, or are you just limiting comment to the first issue?

THE COURT: I am.

MR. BROWN: Thank you, Your Honor.

THE COURT: All right. Well, thank you all very much for bringing the issue today to my attention; I appreciate the presentation of Counsel on it and the candor to date. This is not an evidentiary hearing, it's a status conference, and as Mr. Burnett highlighted, as well as the Trustee, I'm not aware of all the facts. And so I believe the best path forward is to defer to the business judgment of the Trustee, who acts as fiduciary for these estates, to allow the Trustee to commence an auction, to the extent that he is able to do so with the VP2 bid starting as the opening bid or the overbid.

I make no judgment on any issue with respect to

the bid, the behavior of VP2, or the viability of any successful bid that may be determined by the Trustee following the conclusion of the auction. In other words, all rights are reserved and the issues with respect to any winning bidder, and potential collusion and bad faith behavior, are reserved. And as Mr. Taylor pointed out and Mr. Burnett pointed out, they will have the opportunity or the parties will be given the opportunity to present their case at a future sale hearing, and I'll make all determinations then. Whether or not Liquid Lotus chooses to participate in the auction going forward is a decision that Liquid Lotus will have to make, but all rights are reserved.

Okay. Is there any other issue then that needs to be brought to my attention other than the scheduling of the sale hearing, which I do not believe my office has received confirmation of.

MR. BROWN: Your Honor, Stuart Brown of DLA Piper on behalf of TriplePoint. I'd like to introduce my partner Eric Goldberg to the Court and cede the podium to him, if that's acceptable to Your Honor.

THE COURT: That would be fine.

MR. BROWN: Thank you, Your Honor.

MR. GOLDBERG: Thank you, Your Honor, this is Eric Goldberg. We obviously take no position on the issue of who should be allowed to bid and we haven't seen the VP2 offer,

so we defer to the Trustee on the question of bidder participation, but we do believe that there should be an auction. I think part of the problem we had here is we didn't have a firm process set up in advance and everybody is sort of working from a different position.

We would propose, I think, that the parties consult and try and come up with some sort of agreed process and deadlines for an auction. And I do want to let the other parties know as a matter of fairness, though, that I think, as a threshold matter, the Liquid Lotus and the VP2 offer -- although I haven't seen it, I assume it's structurally similar to the Liquid Lotus offer -- are a little bit dead on arrival because each of them has as an essential component the sale of the debtors' intellectual property and other assets. And putting aside the hundred-pound gorilla of who owns the wine, that issue aside, each of these proposals, as I understand them, provides for the sale of these other assets.

While there's certainly a dispute about the ownership of the wine, there's no dispute at all that the other assets, the intellectual property, customer lists, and things like that, are property of the debtors, and there's similarly no dispute that TriplePoint has a valid and perfected, unavoidable lien on those assets. That being the case, TriplePoint does not consent to the sale as it's

formulated with either Liquid Lotus or VP2.

The Liquid Lotus offer has the additional complication of the release, which we addressed in the papers, but just as a threshold matter we do not consent to anything that provides for the sale of the IP and other assets that are subject to our lien, we do not consent and we don't think the Trustee has the ability under 363(f), as either offer is formulated, to sell those over our consent.

We are in the process of working on a proposal that we would intend to submit as an offer with a different party, it would be structurally similar, what's called a fulfillment deal, as I think we would fairly call either Liquid Lotus or the VP2 offer, but it of course has the two added benefits. One, it has TriplePoint support, without which we don't think those other assets can be sold, and unlike the Liquid Lotus offer, and I assume it's similar in the VP2 offer, it would provide for a consideration to the bankruptcy estate, neither of which is a component of the VP2 or Liquid Lotus offers.

So, again, we think that if we can get the parties on a call with Mr. Taylor, work out a schedule for the auction and real deadlines, so we don't have all these sideshows about participation and un-firm rules, then I think that's the best way to proceed and that's a process certainly that TriplePoint would support.

Thank you.

THE COURT: I'm happy to hear from the Trustee on these issues. I'll make the following comments.

Having firm deadlines and a process in place is always the best way to proceed, and that's my preference.

Also, I'll make the comment that what's happening is actually a good thing, and I support the fact that parties are interested in formulating proposals that are going to put value in the hands of the estate. However, I guess my question to you, Mr. Goldberg, is are you prepared to fund the going-forward process here, or what's the state of play with respect to the funding of the Trustee's behavior and actions running the sales process?

My understanding is --

MR. GOLDBERG: We haven't --

THE COURT: -- that he's running it on no cash collateral usage.

MR. GOLDBERG: That's correct, Your Honor. We previously allowed the Trustee to use cash collateral and also funded, it was at least one month's rent. We haven't had formal discussions with the Trustee about, you know, what we would be funding forward, but my contemplation is that my client's proposal would include covering the costs incurred to bring about this transaction, obviously, subject to an acceptable timeline, so we're not committed to pay rent until

the end of time, but only under a reasonable schedule that we think is doable for this type of process.

THE COURT: Okay. And my understanding is that the landlord is owed a significant amount of money. I assume you're aware of that and I assume --

MR. GOLDBERG: Yes.

THE COURT: -- they have a warehouseman lien that would be superior to your lien or any other party's interest in the goods.

MR. GOLDBERG: That's my understanding as well, Your Honor.

THE COURT: Okay. It seems like all the parties are acutely aware of the issues that I see, as well as many others.

Mr. Taylor, how do you suggest we move forward with respect to what I would see as positive developments with respect to the sale of the debtors' assets?

MR. TAYLOR: Thank you, Your Honor. We're happy to engage with the parties, but I think what we're going to need is a firm sale hearing set, so that we can work backwards from, so that, you know, this matter doesn't continue to slip and just drag on without any promise of an end. So we would ask, you know, the Court to set a sale hearing within the next week or so, so that we can bring this matter to a conclusion.

THE COURT: Okay. I believe my chambers corresponded with the parties with respect to my extreme lack of availability next week. Monday is a Federal holiday. As much as I would love to commence a hearing and get this resolved, I cannot do that. As you know, Wednesday, Thursday, Friday -- or you may be aware -- is the NCBJ conference, so I will not be available. I could give you one to one and a half hours on Tuesday or, as I mentioned, our duty Judge is Judge Shannon, he would be available to hear you on Wednesday or Thursday. If neither of those options work, then I could hear you the following week.

It seems as if next week might be too quick, but I'll defer to your judgment.

MR. TAYLOR: Yes, Your Honor. I mean, we do appreciate your availability and your unavailability, for that matter. What I would suggest is, given the dates that you've given us, why don't we caucus offline amongst the parties, figure out what is an actual, achievable sale hearing given the parties' positions and work that has to be done, and then we can let your chambers know what works for the parties.

THE COURT: That would be great. Also, I think it's difficult to predict how long the sale hearing will take, but if you had some sort of requested time frame that you'll need three hours, four hours, that's important to let

me know because our calendars are getting quite busy, but if you decide that you would like a date the week of the 16th, then I have a lot of availability that week. Okay?

MR. TAYLOR: Thank you, Your Honor. And we will keep your chambers informed as to how things are developing. If it's contested on all fronts, it's obviously going to take more time than if we were able to strike a deal that everybody can live with.

THE COURT: Okay, great. And, Mr. Taylor, how do you envision documenting the deadlines? Do you envision a notice that would be filed on the docket with respect to these deadlines and the re-noticed sale hearing?

MR. TAYLOR: Yes, Your Honor, I think it would be wise to do that.

THE COURT: Okay. And would there be a revised objection deadline, or would you envision me just hearing any supplemental objections at the sale hearing?

MR. TAYLOR: Your Honor, I would defer to you on that. We would hope that any objections that are going to be filed have been filed to date, but obviously, if the transaction changes, then parties may have issues with it. So --

THE COURT: Okay. Well, at this point it's difficult for me to predict -- or let me say this: Until I know the hearing date, I wouldn't require parties to file

anything formally because, if I'm looking at a hearing and if we're all looking at a hearing next week, that would not give parties an ample opportunity to meaningfully participate in the sales process and then formulate an objection.

So I will say this, I will allow parties to raise objections at the hearing, whenever that may be; however, if you feel it's in your best interest and my best interest to file something prior to that hearing, then parties can do so.

MR. TAYLOR: Thank you, Your Honor.

MR. WAXMAN: Your Honor, Jeff Waxman, may I be briefly hearing on a couple issues?

THE COURT: Sure.

MR. WAXMAN: The first is that we'll certainly work with all of the parties on scheduling and try to resolve things as amicably among the parties as we can.

There's one minor issue that I don't think is really an issue, but one they just put on the record. In addition to the deposit that Liquid Lotus has already provided to the Trustee, there are certain expenses that Liquid Lotus paid already in order to maintain certain things. We expect that whether or not Liquid Lotus even bids, let alone is the -- is a bidder that is not ultimately the successful bidder that those expenses would be repaid as part of the sale.

Second, with respect to the underlying sale, to

the extent that VP2 Solutions is the ultimate successful bidder at an auction, we expect that Mr. Bergman is going to attend in person. The Trustee has the burden of proof. Mr. Bergman is the person who reached out to my client and, because there is a live issue whether or not they can be a bidder, we expect that Mr. Bergman will attend and be available for examination. If counsel believes that we need to subpoena Mr. Bergman and if the Court believes that that's necessary, we will certainly do so -- although, given the time frame in terms of the auction, I think we should probably find that out now.

THE COURT: Mr. Waxman, I don't think today is the day, at least with me on the phone. The parties can meet and confer following the conclusion of this hearing and discuss these procedural issues without the presence of the Court. If there's issues that arise between now and the sale hearing that you feel I should address, you may bring them to my attention with proper briefing or letter submissions, or if witnesses do not appear at the court, then it goes to the evidentiary burden. So I'll make the decisions as I need to.

MR. WAXMAN: I appreciate that. Thank you, Your Honor.

THE COURT: Okay. All right, anyone else or anything else we should discuss before I leave you all to go back to the very important work you're all doing for the

estate?

MR. TAYLOR: Nothing for the Trustee, Your Honor. Thank you.

THE COURT: Okay. All right. Thank you again for all of your efforts, especially to the Trustee, who is working tirelessly to achieve a benefit for the estate. I look forward to seeing you all at the sale hearing and, hopefully, it's a success.

Please reach out to chambers when you have the schedule set in stone and file the appropriate paperwork to notify the parties in interest in this case.

Thank you all very much and we'll consider today's status conference adjourned. Take care.

(Proceedings concluded at 3:28 p.m.)

CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter to the best of my knowledge and ability.

/s/ Tracey Williams October 12, 2023

Tracey Williams, CET-914
Certified Court Transcriptionist
For Reliable