# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| PHOENO WINE COMPANY, INC., et al. | ) | Case No. 23-10554 (KBO) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Related Docket No. 183** |

**SUPPLEMENTAL DECLARATION IN FURTHER SUPPORT OF MOTION OF DON A. BESKRONE, CHAPTER 7 TRUSTEE, FOR AN ORDER (A) AUTHORIZING THE PRIVATE SALE OF CERTAIN ASSETS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES, (B) AUTHORIZING PURCHASER TO FULFILL EXISTING CUSTOMER ORDERS, (C) AUTHORIZING ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, (D) AUTHORIZING THE TRUSTEE TO SERVE NOTICE OF THIS MOTION ON CUSTOMERS BY EMAIL, AND (E) GRANTING RELATED RELIEF**

| | | |
|---|---|---|
| STATE OF DELAWARE | ) | |
| | ) | ss.: |
| COUNTY OF NEW CASTLE | ) | |

Don A. Beskrone, being duly sworn, deposes and says:

1. I am a director of the firm of Ashby & Geddes, P.A., which maintains an office for the practice of law at 500 Delaware Avenue, 8th Floor, Wilmington, Delaware 19899. I make this declaration (the "Declaration") in support of the *Motion for an Order (A) Authorizing the Private Sale of Certain Assets Free and Clear of Liens, Claims, Interests, and Encumbrances, (B) Authorizing Purchaser to Fulfill Existing Customer Orders, (C) Authorizing Assumption and Assignment of Certain Executory Contracts and Unexpired*

*Leases, (D) Authorizing the Trustee to Serve Notice of this Motion on Customers by Email, and (E) Granting Related Relief* (the "Sale Motion").[1]

2. Except as otherwise indicated, the statements contained herein are based on my personal knowledge, as well as information I have received from professionals and other parties assisting in my administration of these chapter 7 cases (the "Cases").

3. On May 1, 2023 (the "Petition Date"), the Debtors filed voluntary petitions under Chapter 7 of the Bankruptcy Code commencing these Cases. On the same date, the Debtors filed their schedules of assets and liabilities and statement of financial affairs [Docket Nos. 1].

4. Following the filing of the bankruptcy petitions, the United States Trustee for the District of Delaware appointed me to serve as Chapter 7 Trustee in the Cases. A meeting of creditors under and pursuant to 11 U.S.C. § 341(a) was held and concluded on June 13, 2023.

5. Since the filing of the Sale Motion, the Trustee has entered into 3 additional nondisclosure agreements with potentially interested parties, provided diligence and facilitated 2 additional site visits at the Warehouse. In total, the Trustee has entered into non-disclosure agreements and provided diligence materials with 11 potentially interested parties.

6. On September 26, 2023, the Trustee received a competing offer from VP2 Solutions, LLC. In addition, on October 11, 2023, the Trustee received a competing offer from one of the Debtors' prepetition lenders, TriplePoint Private Venture Credit Inc. ("TriplePoint")

7. On October 12, 2023, the Trustee advised the 3 bidders that as of that time, he considered the offer submitted by VP2 Solutions as the highest and best offer and that he would conduct an auction on October 13, 2023.

---

[1] Capitalized terms used herein but not otherwise defined shall have the meaning ascribed to them in the Sale Motion.

8.      On October 13th, beginning at 10:00 a.m., the Trustee conducted an auction in which Liquid Lotus, VP2 Solutions and TriplePoint participated. The auction was held via Zoom and transcribed by a court reporter. Prior to the start of the bidding, each bidder agreed that if their last bid was determined by the Trustee to be the 2nd highest and best offer, that they would hold open their bid for a period of 10 days following entry of an Order approving the sale to the bidder determined by the Trustee to have submitted the highest and best offer.

9.      There were multiple rounds of bidding with a total of 16 bids submitted. With respect to each bid submitted, the Trustee considered, among other things, (1) the ability to obtain Bankruptcy Court approval, (2) the ability of each bidder to close the transaction, (3) the benefit to the estate in the amount of both cash and non-cash consideration, (4) the opportunity afforded to Customers to recover purchased wine at the lowest cost possible and (5) the associated reduction in claims against the Estates.

10.     The auction concluded at approximately 5:45 p.m.

11.     At the conclusion of bidding, the Trustee determined that the last offer submitted by TriplePoint was the highest and best offer received. TriplePoint's offer consists of a $4.5 million credit bid, which TriplePoint allocates $3 million for the wine assets and $1.5 million for the non-wine assets, plus $400,000 of cash and reimbursement of $2,722.19 to Liquid Lotus for an administrative expense that had been paid by Liquid Lotus for the benefit of the estates.

12.     The Trustee determined that the second highest bid was the last bid submitted by Liquid Lotus in the amount of $1.1 million of cash.

13.     In determining the highest and best offer the Trustee considered three primary factors: (1) the legal impediments to obtaining Bankruptcy Court approval of each of the non-conforming bids, (2) the cash component of the bids, including the certainty of multi-faceted

post-sale litigation with TriplePoint regarding (a) validity, extent and priority of its disputed lien on the wine inventory, (b) valuation of its undisputed lien on non-wine collateral and (c) surcharge of its collateral under section 506 of the Bankruptcy Code, if the Liquid Lotus bid were to be approved by the Bankruptcy Court, and (3) treatment of the customers under each of the non-conforming bids.

14. The Trustee's determination that the TriplePoint offer constitutes the highest and otherwise best offer for the Purchased Assets is a valid and sound exercise of his fiduciary duty and constitutes a valid and sound exercise of the Trustee's business judgment.

15. The Trustee submits that adequate and reasonable notice of the Sale was provided to interested parties. (*See* D.I. Nos. 206 and 208). Further, counterparties received adequate and reasonable notice of the proposed assumption and assignment of executory contracts and unexpired leases and the proposed cure amounts related thereto. The Trustee further submits that TriplePoint along with its fulfillment agent, Last Call Capital, will be able to perform its future obligations under such executory contracts and unexpired leases.

16. The Sale process was fair and reasonably designed under the circumstances to solicit the highest and best offer for the Purchased Assets. As described, the Trustee conducted an auction with multiple rounds of bidding among 3 bidders. As such, the sale process produced a fair and reasonable price for the Purchased Assets.

17. The Trustee submits that both the Trustee and TriplePoint have acted in good faith. The TriplePoint APA was negotiated, proposed, and entered into by the Trustee and TriplePoint without collusion, in good faith, and from arms'-length bargaining positions and is substantively and procedurally fair to all parties. The Trustee believes that Triplepoint will be able to close the sale transaction and perform all associated obligations in a timely fashion.

I declare under penalty of perjury that the foregoing is true and correct.

Dated:  October 16, 2023         /s/  Don A. Beskrone
                                                 Don A. Beskrone (No. 4380)
                                                 *Chapter 7 Trustee*